Filed 12/11/15  Certified for publication 1/6/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

SCC ACQUISITIONS, INC.,

    Petitioner,

       v.

THE SUPERIOR COURT OF ORANGE COUNTY,

    Respondent;

WESTERN ALBUQUERQUE LAND HOLDINGS, LLC,

    Real Party in Interest.

G050546

(Super. Ct. No. 30-2012-00574257)

O P I N I O N

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Timothy J. Stafford, Judge.  Petition denied. Motion to dismiss appeal.  Denied.

Miller Barondess, Louis R. Miller, Amnon Z. Siegel and Mira Hashmall for Petitioner.

No appearance for Respondent.

K&L Gates and Kevin S. Asfour for Real Party in Interest.

## INTRODUCTION

Western Albuquerque Land Holdings, LLC (Western), is the judgment creditor of a $47 million judgment against SCC Acquisitions, Inc. (SCC). As part of its efforts to enforce the judgment, Western propounded requests for production of documents to SCC pursuant to Code of Civil Procedure section 708.030[1] (further code references are to the Code of Civil Procedure unless otherwise specified) and later brought a motion to compel SCC to respond further to those requests. The trial court granted Western's motion to compel as to requests Nos. 14, 21, 22, 23, and 37. SCC appeals from the order granting Western's motion to compel.

Western has moved to dismiss the appeal on the ground the order granting its motion to compel is not an appealable postjudgment order under section 904.1, subdivision (a)(2). We exercise our discretion to treat the appeal as a petition for writ of mandate and deny it. The trial court did not err by granting Western's motion to compel. We conclude the trial court had authority under section 708.030 to compel SCC to produce documents in its possession or control regarding third parties, and we reject SCC's contentions that requests Nos. 14, 21, 22, 23, and 37 violate the privacy rights of third parties and that requests Nos. 21, 22, 23, and 37 are overbroad.

## FACTS AND PROCEDURAL HISTORY

### I. Background

In June 2012, Barclays Capital Real Estate Inc. (Barclays) obtained a civil judgment against SCC in the amount of $47,186,985.38 in a New York State court.

---

[1] Under Code of Civil Procedure section 708.030, subdivision (a), "[t]he judgment creditor may demand that any judgment debtor produce and permit the party making the demand . . . to inspect and to copy a document that is in the possession, custody, or control of the party on whom the demand is made in the manner provided in [the Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.)], if the demand requests information to aid in enforcement of the money judgment." While section 708.030 speaks of demands to inspect and copy documents, Western and SCC use the term "requests for production of documents," and so shall we.

2

Barclays filed an application in Orange County Superior Court for entry of judgment on a sister-state judgment. The superior court entered judgment on the application. In November 2012, Barclays assigned the judgment to Western.

In January 2014, Western obtained an order to conduct the judgment debtor examination of SCC through its corporate secretary, Bruce Cook. During the judgment debtor examination, Cook testified, among other things, that SCC was once a real estate acquisition company but had not been viable since about September 2008, when Lehman Brothers filed bankruptcy and the real estate market collapsed. According to Cook, SCC has no money or meaningful assets.

During Cook's examination, a dispute arose over the issue of whether he should have to answer questions relating to various nonparty entities. Cook, who is an attorney, asserted the attorney-client privilege. During a recess in the examination, counsel contacted the presiding judicial officer, who asked for briefing on the issue. The precise issue presented was, "[s]hould the creditor be permitted to examine this witness who they designated as to third party entities when he is an attorney and may be called upon to disclose attorney/client privileged materials?" In April 2014, after reviewing the parties' briefs and hearing oral argument, the court issued a ruling resolving that issue as follows: "No. The creditor cannot compel a witness of a debtor to disclose[] privileged material [p]ertaining to 3rd parties when he is there to testify regard[ing] matters of the debtor, SCC." The court denied the request to examine Cook about the third party entities for which he was the attorney.

## II.  The Requests for Production

Western propounded requests for production of documents on SCC pursuant to section 708.030. SCC objected to many of Western's requests but also produced some 217 pages of documents. SCC objected to requests for production Nos. 14, 21, 22, 23, and 37 and declined to produce any documents in response to them. Those five requests for production read as follows:

3

Request for Production No. 14: "Any and all DOCUMENTS sufficient to show the name and address of each business in which each of [SCC's] current or former officers, shareholders, and/or directors now has an interest and the nature of each such person's interest in each such business."

Request for Production No. 21: "Any and all DOCUMENTS CONCERNING ASSETS owned by any entities that currently are or previously were a subsidiary or affiliate of [SCC]."

Request for Production No. 22: "Any and all DOCUMENTS CONSTITUTING BANK AND BROKERAGE RECORDS of any entities that currently are or previously were a subsidiary or affiliate of [SCC]."

Request for Production No. 23: "Any and all DOCUMENTS CONSTITUTING FINANCIAL RECORDS of any entities that currently are or previously were a subsidiary or affiliate of [SCC]."

Request for Production No. 37: "The name(s) of any of YOUR current or former subsidiaries or affiliates that have been involved in any bankruptcy, insolvency, or receivership proceeding, the case number and court of each such proceeding, and the date on which each such proceeding was filed."

SCC objected to those requests on these grounds: (1) the requests sought documents of third parties, (2) the requests sought documents protected by the right of privacy, (3) the requests were vague and ambiguous, and (4) the requests were burdensome and unduly expansive because the terms "DOCUMENTS," "ASSETS," "BANK AND BROKERAGE RECORDS," and "FINANCIAL RECORDS" were too broadly defined.

### III. Motion to Compel

Counsel for Western initiated the meet and confer process on March 24, 2014, by sending an e-mail to counsel for SCC. In the e-mail, counsel asserted that SCC's responses to requests Nos. 14, 21, 22, 23, and 37 were "deficient," SCC had made

4

"impermissible boilerplate general objections," and, from the responses and objections, Western could not tell whether SCC was withholding responsive documents. Western's counsel proposed extending the deadline for bringing a motion to compel until after the trial court ruled on a pending motion that might determine the permissible scope of judgment debtor discovery. On March 25, SCC's counsel, responding by e-mail, agreed to the extension of time.

On May 7, 2014, counsel for Western resumed the meet and confer process by sending an e-mail to SCC's counsel, regarding requests for production Nos. 14, 21, 22, 23, and 37. In addition to reiterating points made in the March 24, 2014 e-mail, counsel stated in the May 7 e-mail: "[S]everal of the requests at issue seek documents pertaining to SCC's current or former subsidiaries. [Western] plainly has the right to discovery regarding such matters—indeed, in the recent briefing submitted to the court, you represented that you have no objection to responding to inquiries 'about entities in which SCC has had an interest.'" Counsel for SCC responded with an e-mail asking for additional time to respond to the points raised in the May 7 e-mail and agreeing to an extension of time to bring a motion to compel.

SCC thereafter retained new counsel, who sent to Western's counsel a letter dated May 14, 2014, stating, in regard to requests for production Nos. 14, 21, 22, 23, and 37: "There are a number of deficiencies with the RFPs, and SCC stands by its objections." In the letter, SCC's counsel asserted the requests for production impermissibly sought documents from third parties, were overbroad, and used "a number of undefined terms (*e.g.*, subsidiary or affiliate) that make it impossible for SCC to know what documents [Western] is requesting." SCC's counsel also asserted that request No. 14 "violates the privacy rights of third party individuals."

Western moved to compel further responses to all of its requests for production (the motion to compel). The trial court granted the motion to compel as to

requests Nos. 14, 21, 22, 23, and 37, and denied the motion to compel as to the remainder of the requests. SCC timely appealed from the order granting the motion to compel.

## APPELLATE JURISDICTION

We first address our jurisdiction to hear this matter. Western has filed a motion to dismiss the appeal on the ground the order granting its motion to compel is not an appealable order under section 904.1, subdivision (a). SCC argues in response the order granting the motion to compel is appealable under section 904.1, subdivision (a)(2) as a postjudgment order.

Under section 904.1, subdivision (a)(2), an appeal may be taken from an order made after an appealable judgment. Despite the broad language of section 904.1, subdivision (a)(2), not all postjudgment orders are appealable. (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651.) To be appealable, a postjudgment order must satisfy two requirements: (1) the issues raised by the appeal from the order must be different from those arising out of the appeal from the judgment and (2) the order must affect, enforce, or stay execution of the judgment. (*Id.* at pp. 651-652.) Postjudgment orders that are nonappealable tend to fall into two categories: (1) orders that are preliminary to a later judgment, at which time they can be challenged by appeal, and (2) orders that pertain to preparation of a record for use in a later appeal. (*Id.* at pp. 652-653.) "[P]ostjudgment orders making a final determination of rights or obligations of parties" are appealable even if they do not "add to or subtract from the judgment." (*Id.* at p. 653.)

Several cases have considered whether postjudgment discovery orders are directly appealable. In *Rogers v. Wilcox* (1944) 62 Cal.App.2d 978, 979, the Court of Appeal held an order denying a motion to quash an order for the appearance of the judgment debtor was not appealable. The court explained: "Neither an order for appearance of a judgment debtor nor the order for his examination is in itself an end.

6

Each is merely a step reviewable only after a final order has been made. It adjudicates no rights; it establishes no liabilities. [Citation.] It is not a special order made after final judgment though made subsequent to entry of the judgment. [Citation.] It bears no relation to the judgment. It is a separate proceeding in an original action which is a substitute for the creditor's bill. [Citation.]" (*Id.* at pp. 979-980.)

The postjudgment order under consideration in *Roden v. AmerisourceBergen Corp.* (2005) 130 Cal.App.4th 211, 214-215 (*Roden*), was, as in this case, to compel production of documents under section 708.030. The Court of Appeal concluded the order was not appealable because it made no final determination of the rights and obligations of the parties. (*Roden*, *supra*, at p. 216.) The underlying judgment adjudicated the plaintiff's rights to employment benefits arising out of an employment contract but did not quantify all of those benefits, and the trial court had retained jurisdiction to resolve the remaining issues regarding benefits at a later time. (*Id.* at pp. 216-217.) The postjudgment order granting the motion to compel was, therefore, "a prelude" to a later order adjudicating the amount of benefits owing. (*Id.* at p. 217.) Once the order adjudicating the amount of benefits had been entered, an appeal from that order might include a challenge to the discovery order. (*Ibid.*)

In *Macaluso v. Superior Court* (2013) 219 Cal.App.4th 1042, 1044-1045 (*Macaluso*), a panel of the Court of Appeal, Fourth District, Division One, addressed whether a postjudgment order compelling a third party to comply with a subpoena duces tecum and produce documents at a judgment debtor examination was appealable. The court concluded the order was appealable because the subpoena was issued to "a previously uninvolved third party for purely investigative purposes." (*Id.* at p. 1049.) The court distinguished *Roden* on the ground the order in that case "resolved disputes between parties to an ongoing lawsuit preparatory to a later ruling that would become encompassed in a later final judgment." (*Macaluso*, *supra*, at p. 1050.) In contrast, the order at hand was not preparatory to a later determination from which the third party

7

could appeal, but itself was a final determination that the third party had to produce certain documents in response to a subpoena. (*Ibid.*)

On the heels of *Macaluso*, a different panel of the Court of Appeal, Fourth District, Division One, reached a different conclusion in *Fox Johns Lazar Pekin & Wexler, APC v. Superior Court* (2013) 219 Cal.App.4th 1210 (*Fox*). Although *Fox* was an appeal from an order for a third party judgment debtor examination under section 708.120, the Court of Appeal, citing *Rogers v. Wilcox*, *supra*, 62 Cal.App.2d 978, held the order was not appealable because it was just one step in the course of a proceeding to obtain information about the judgment debtor's assets. (*Fox*, *supra*, at p. 1215.) The court found the circumstances of the matter to be extraordinary and exercised its discretion to treat the appeal as a petition for writ of mandate. (*Id.* at p. 1218.) As to *Macaluso*, the *Fox* court stated: "We are aware of the recent opinion from this court issued after oral argument here, wherein the court held that a third party may appeal an order overruling all of the third party's objections to the subpoena and granting a motion to compel compliance with the subpoena. [Citation.] We think the better approach here, on the unique facts before us where it is not clear if the superior court will be issuing further orders regarding the very discovery at issue, is to treat the appeal like a petition for writ of mandate." (*Fox*, *supra*, at p. 1218, fn. 4.)

These authorities are inconclusive as to whether the order granting the motion to compel is appealable. Certainly the issues raised by the appeal from that order are different from those that would arise out of an appeal from the underlying judgment. (See *Lakin v. Watkins Associated Industries*, *supra*, 6 Cal.4th at p. 651.) The order, like those in *Rogers v. Wilcox* and *Fox*, is just one step in the course of a proceeding to obtain information about the judgment debtor's assets. Unlike the situation in *Macaluso*, the order does not compel a third party to comply with a subpoena. *Roden* dealt directly with an order granting a postjudgment motion to compel, and yet, unlike the situation in *Roden*, the order granting the motion to compel does not appear to be preliminary or

8

preparatory to a later determination from which an appeal can be taken. Western has not identified what any future determination might be. The underlying judgment in this case fully adjudicated the parties' rights and obligations.

We have the power to treat the appeal as a petition for writ of mandate, and do so here. (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 744-747; *Olson v. Cory* (1983) 35 Cal.3d 390, 401.) In *Olson v. Cory*, *supra*, 35 Cal.3d at pages 398, 400-401, the Supreme Court found it appropriate to treat an appeal from a nonappealable order as a petition for writ of mandate because there was an inadequate remedy at law, the records and briefs in substance included the elements necessary for proceeding as a writ of mandate, there was no indication the trial court would appear as a party in the writ proceedings, the appealability of the challenged order was not clear, and the parties urged the court to decide the issue rather than to dismiss the appeal. Dismissing the appeal instead of exercising the court's discretion to reach the merits through a writ of mandate proceeding would be "'"unnecessarily dilatory and circuitous."'" (*Id.* at p. 401.)

The conditions identified in *Olson v. Cory* are, with one exception, present in this case. SCC has no adequate legal remedy if the order granting the motion to compel is not appealable. While SCC in theory can challenge the order in an appeal from a later judgment or order that is appealable, it is not certain such a judgment or order would ever be made. SCC contends the documents subject to the order granting the motion to compel are subject to the right of privacy. An appeal from a later judgment or order, made after the documents are produced, would not adequately protect that right. The briefs and appellate record are thorough and meet the needs for writ review, and there is no indication the trial court would be any more than a nominal party to the writ proceeding. As we have explained, whether the order granting the motion to compel is appealable is far from clear. Although Western seeks dismissal of the appeal, this one exception is insignificant.

9

## DISCUSSION

### I. Standard of Review

"The standard of review for a discovery order is abuse of discretion." (*People ex rel. Harris v. Sarpas* (2014) 225 Cal.App.4th 1539, 1552.) "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citation.] [¶] 'The abuse of discretion standard . . . measures whether, given the established evidence, the act of the lower tribunal falls within the permissible range of options set by the legal criteria. . . .'" (*Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089.) The scope of the trial court's discretion is limited by law governing the subject of the action taken. (*Ibid.*) An action that transgresses the bounds of the applicable legal principles is deemed an abuse of discretion. (*Ibid.*)

### II. The Trial Court Had Authority to Compel SCC to Produce Documents Relating to Third Parties.

The trial court granted the motion to compel further responses to request No. 14, which asked for documents concerning SCC's "current or former officers, shareholders, and/or directors," and requests Nos. 21, 22, 23, and 37, which asked for documents concerning entities that are or were a SCC "subsidiary or affiliate" or SCC "subsidiaries or affiliates." SCC argues the trial court lacked statutory authority to grant the motion to compel because section 708.030 does not authorize a judgment creditor to compel production of a third party's documents.

We independently review issues of statutory construction. (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.) The fundamental task of statutory interpretation is to ascertain the Legislature's intent to effectuate the statute's purpose. (*Ibid.*) We do so first by considering the language of the statute itself, giving the words

10

used their ordinary meaning.  (*Ibid*.)  If the statutory language is unambiguous, the plain meaning controls and consideration of extrinsic sources to determine the Legislature's intent is unnecessary.  (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 919.)  We read the statute as a whole to harmonize and give effect to all parts.  (*Ste. Marie v. Riverside County Regional Park & Open-Space Dist*. (2009) 46 Cal.4th 282, 289.)

A judgment creditor may conduct discovery directly against the judgment debtor by means of a judgment debtor examination (§ 708.110), written interrogatories (§ 708.020), and requests for production of documents (§ 708.030).  Section 708.030, subdivision (a) provides:  "The judgment creditor may demand that any judgment debtor produce and permit the party making the demand, or someone acting on that party's behalf, to inspect and to copy a document that is in the possession, custody, or control of the party on whom the demand is made in the manner provided in [the Civil Discovery Act], if the demand requests information to aid in enforcement of the money judgment. The judgment debtor shall respond and comply with the demand in the manner and within the time provided by [the Civil Discovery Act]."

In contrast to discovery directed to the judgment debtor, discovery directed to a third party is limited to an appearance before the court or a referee by the third party to answer questions about property or debt in which the judgment debtor has an interest. (§ 708.120.)  The first sentence of section 708.120, subdivision (a) reads:  "Upon ex parte application by a judgment creditor who has a money judgment and proof by the judgment creditor by affidavit or otherwise to the satisfaction of the proper court that a third person has possession or control of property in which the judgment debtor has an interest or is indebted to the judgment debtor in an amount exceeding two hundred fifty dollars ($250), the court shall make an order directing the third person to appear before the court, or before a referee appointed by the court, at a time and place specified in the order, to answer concerning such property or debt."

11

Section 708.030, subdivision (a) is unambiguous. In plain terms, it places but two limitations on the scope of requests for production of documents. First, the document requested must be "in the possession, custody, or control of the party on whom the demand is made." (*Ibid.*) Second, the document requested must have "information to aid in enforcement of the money judgment." (*Ibid.*) If the document requested is "in the possession, custody, or control of the party on whom the demand is made" and has "information to aid in enforcement of the money judgment," then the document is subject to discovery under section 708.030, regardless whether the document relates to the judgment debtor or to third parties.

SCC argues such a reading of section 708.030 permits a judgment creditor to obtain indirectly from the judgment debtor documents which it cannot obtain directly from the third party and "renders Section 708.120's requirements meaningless." There is, however, a difference between discovery *about* a third party and discovery *from* a third party. Documents that are in the possession, custody, or control of the judgment debtor are not third party documents: they are judgment debtor documents, and discovery aimed to obtain them is not third party discovery. Section 708.030 does not permit the judgment creditor to obtain documents that are not in the possession, custody, or control of the judgment debtor. Nor does section 708.030 permit the judgment creditor to obtain an order compelling a third party to appear before the court or referee to answer questions about property or debt in which the judgment debtor has an interest. If the judgment creditor wants to discover such information directly from the third party, then the procedures of section 708.120 must be followed. But that was not the situation here. The trial court compelled production of documents in the possession, custody, or control of SCC, the judgment debtor, an outcome authorized by section 708.030.

SCC relies on *Fox*, *supra*, 219 Cal.App.4th 1210, for the proposition that third party judgment debtor discovery is limited to the procedure of section 708.120. In *Fox*, the Court of Appeal explained: "Simply put, the purpose of section 708.120 is to

12

provide a tool that allows a judgment creditor to find property or money that is owed to the judgment debtor. To this end, it allows the judgment creditor to obtain an order to examine a third party who it believes possesses the judgment debtor's property or owes the judgment debtor a debt over $250. . . . [T]he statute clearly provides that the third party is to answer questions regarding the subject property or debt. Section 708.120 does not allow for a more expansive examination." (*Fox*, *supra*, at p. 1221.) As *Fox* recognizes, section 708.120 limits the scope of discovery against a third party. Section 708.120 does not, however, apply to discovery against the judgment debtor.

SCC also suggests that the trial court's ruling on the scope of Cook's examination constituted an order barring any third party discovery. The court ruled only that Cook could not be made to disclose information protected by the attorney-client privilege. The court said nothing about whether SCC could be compelled to produce documents in its possession, custody, or control, pertaining to other entities. The court stated in its ruling: "A judgment creditor may employ a debtor's exam process to explore possible alter ego theories and to aid in enforcing a judgment. [Citation.] [¶] However, a different rule applies to examination of 3rd parties in the judgment enforcement context. Under CCP 708.120, the exam is limited to exploring the 3rd party's possession of the judgment debtor's property and the debt owed." The trial court correctly stated the rule. Requests Nos. 14, 21, 23, and 37 did not constitute an examination of a third party, but instead sought documents from the judgment debtor (SCC) to explore possible alter ego theories. Thus, the ruling on the motion to compel was consistent with the ruling on the scope of Cook's examination.[2]

---

[2] Our disposition of this matter would not be different if the order granting the motion to compel was inconsistent with the order regarding Cook's testimony. The order regarding Cook's testimony was interlocutory and therefore could be modified or retracted at any time before entry of a final judgment. (See *Yeboah v. Progeny Ventures, Inc.* (2005) 128 Cal.App.4th 443, 449.)

13

### III. The Requests for Production Did Not Violate Privacy Rights of Third Parties and Were Not Overbroad.

Having determined the trial court had the authority to make an order granting the motion to compel, we turn to the issue whether the order was correct. It was. The trial court did not abuse its discretion by ordering SCC to respond to requests Nos. 14, 21, 22, 23, and 37.

A. *Request No. 14*

Request No. 14 asked for documents "sufficient to show the name and address of each business in which each of [SCC's] current or former officers, shareholders, and/or directors now has an interest and the nature of each such person's interest in each such business."

SCC argues request No. 14 violates the privacy rights of its current and former officers, shareholders, and directors. The right of privacy is an "'inalienable right'" secured by article I, section 1 of the California Constitution. (*Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656.) The right of privacy protects against the unwarranted, compelled disclosure of private or personal information and "extends to one's confidential financial affairs as well as to the details of one's personal life." (*Ibid.*) "'Personal financial information comes within the zone of privacy protected by article I, section 1 of the California Constitution.'" (*Harris v. Superior Court* (1992) 3 Cal.App.4th 661, 664; see *In re Marriage of Burkle* (2006) 135 Cal.App.4th 1045, 1063 ["The right to privacy extends to one's personal financial information."].)

The constitutional right of privacy does not provide absolute protection "'but may yield in the furtherance of compelling state interests.'" (*People v. Wharton* (1991) 53 Cal.3d 522, 563.) "[C]ourts must balance the right of civil litigants to discover relevant facts against the privacy interests of persons subject to discovery." (*Vinson v. Superior Court* (1987) 43 Cal.3d 833, 842.) "In determining whether disclosure is

14

required, the court must indulge in a 'careful balancing' of the right of a civil litigant to discover relevant facts, on the one hand, and the right of the third parties to maintain reasonable privacy regarding their sensitive personal affairs, on the other. [Citation.] The court must consider the purpose of the information sought, the effect that disclosure will have on the affected persons and parties, the nature of the objections urged by the party resisting disclosure and availability of alternative, less intrusive means for obtaining the requested information. [Citation.] Based on an application of these factors, the more sensitive the nature of the personal information that is sought to be discovered, the more substantial the showing of the need for the discovery that will be required before disclosure will be permitted. [Citations.]" (*Hooser v. Superior Court* (2000) 84 Cal.App.4th 997, 1004.)

Obtaining information to collect on a judgment is "a valid significant interest." (*Hooser v. Superior Court*, *supra*, 84 Cal.App.4th at p. 1007.) Having been assigned a substantial money judgment against SCC, Western has a right to discover facts about the nature and location of assets to make that judgment more than a scrap of paper. The information sought by Western's discovery is financial in nature and a protective order could be issued, if necessary, to safeguard privacy rights of third parties. SCC has not identified other sources from which the information sought by the discovery can be obtained.

B. *Requests Nos. 21, 22, 23, and 37*

1. *Privacy*

SCC argues requests Nos. 21, 22, 23, and 37 sought documents protected by the right of privacy. Unlike request No. 14, requests Nos. 21, 22, 23, and 37 sought documents from business entities. "'The extent of any privacy rights of a business entity is unsettled.'" (*S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.* (2010) 186 Cal.App.4th 383, 396, fn. 6.) Some opinions hold that the California Constitution protects only the privacy rights of human beings, other opinions hold that business entities have zones of

15

privacy rights, and others assume without deciding that corporations enjoy a constitutional right of privacy. (See *Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 314, fn. 16 [comparing cases without deciding issue].)

We conclude corporations do not have a right of privacy protected by the California Constitution.[3] Article I, section 1 of the California Constitution protects the privacy rights of "people" only.[4] "'[T]he constitutional provision simply does not apply to corporations.'" (*Ameri-Medical Corp. v. Workers' Comp. Appeals Bd.* (1996) 42 Cal.App.4th 1260, 1287, quoting *Roberts v. Gulf Oil Corp.* (1983) 147 Cal.App.3d 770, 791; see *Zurich American Ins. Co. v. Superior Court* (2007) 155 Cal.App.4th 1485, 1504 [corporation acknowledged that it had no right of privacy under the California Constitution].) While corporations do have a right to privacy, it is not a constitutional right. The corporate right to privacy is a lesser right than that held by human beings and is not considered a fundamental right. (*Ameri-Medical Corp. v. Workers' Comp. Appeals Bd.*, *supra*, at pp. 1287-1288.)

Because the corporate privacy right is not constitutionally protected, the issue presented in determining whether Western's requests for production infringe that right is resolved by a balancing test. The discovery's relevance to the subject matter of the pending dispute and whether the discovery "'appears reasonably calculated to lead to the discovery of admissible evidence'" is balanced against the corporate right of privacy. (*Hecht, Solberg, Robinson, Goldberg & Bagley LLP v. Superior Court* (2006) 137 Cal.App.4th 579, 595.) Doubts about relevance generally are resolved in favor of permitting discovery. (*Ibid.*)

---

[3] During oral argument, counsel for SCC conceded that corporations do not enjoy a constitutionally protected right of privacy.

[4] Article I, section 1 of the California Constitution states: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

16

Requests Nos. 21, 22, 23, and 37 are relevant to determining whether other entities could and should be added as judgment debtors under section 187 as alter egos of SCC. With the motion to compel, Western submitted evidence that SCC intermingled records, equipment, personnel, and resources with other parties, and that SCC's accounting records reflected a large volume of transactions flowing through SCC that were not reflected on its bank statements, including payments to third parties. As Western seeks only documents in the possession or control of SCC, any privacy rights of third party entities already have been compromised if not altogether waived. A protective order can be issued, if necessary, to safeguard any remaining privacy rights.

2. *Breadth*

SCC argues requests Nos. 21, 22, 23, and 37 are so broad in scope that they are abusive. Specifically, SCC argues (1) those requests constitute an impermissible "blanket request for generalized categories of documents," and (2) Western failed to clarify the meaning of the term "former or current 'subsidiaries or affiliates.'"

Requests Nos. 21, 22, 23, and 37 are not overbroad but seek specific, identifiable categories of documents from SCC. Requests for production Nos. 21, 22, 23, and 37 sought documents regarding entities that "currently are or previously were a subsidiary or affiliate of [SCC]." Request No. 21 sought "DOCUMENTS CONCERNING ASSETS," request No. 22 sought "DOCUMENTS CONSTITUTING BANK AND BROKERAGE RECORDS," request No. 23 sought "DOCUMENTS CONSTITUTING FINANCIAL RECORDS," and request No. 37 sought the name of any such subsidiaries or affiliates that had been involved in a bankruptcy, insolvency, or receivership proceeding, the case number and court of each proceeding, and the date on which such proceeding was filed.

SCC cites *Calcor Space Facility, Inc. v. Superior Court* (1997) 53 Cal.App.4th 216, 218 (*Calcor*), in which a panel of this court held that a subpoena duces tecum placed an unreasonable burden on the responding party by making what amounted

17

to a "[g]eneralized demand[]." *Calcor* arose out of a contract between the defendant and the plaintiff for the plaintiff to manufacture gun mount systems. (*Id.* at p. 219.) The defendant claimed the gun mounts manufactured by the plaintiff did not meet the designated specifications, refused to accept the gun mounts, and contracted with a third party to supply them. (*Ibid.*) The plaintiff sued the defendant on various theories and in the course of the litigation served a third party with a subpoena duces tecum that included 32 requests for production of documents, "expanded by 6 pages of 'definitions' and 'instructions.'" (*Id.* at pp. 219-220.) The Court of Appeal concluded that the requests for production, "[a]lthough facially detailed and particularized" (*id.* at p. 220), in effect required the third party to produce everything in its possession which had anything to do with gun mounts for the previous 10 years (*id.* at p. 219.) In addition, the definitions and instructions were "particularly obnoxious" and turned each of the 32 requests "into a complicated 'category' described in more than 6 pages." (*Id.* at p. 223.)

*Calcor* does not help SCC. Its claim of overbreadth is directed only to four requests for production (Nos. 21, 22, 23, and 37), each of which asked for a discrete category of documents. The definitions included with the requests for production, though lengthy, do not make the requests overbroad, and do not turn them into blanket or generalized demands. The definition of "DOCUMENT," for example, does not broaden the scope of the requests, but provides particularity as to the types of documents and things being sought. Extensive definitions often are necessary to prevent incomplete or evasive responses.

SCC asserts the words "subsidiary" and "affiliate" suffer from lack of any definition. The words "affiliate" and "affiliated" are defined in section 151 of the Corporations Code, and the word "subsidiary" is defined in section 189 of the Corporations Code. Because the Corporations Code definitions would naturally and automatically apply to the requests for production, Western did not need to supply definitions, and Western fully complied with its meet and confer obligations before

18

bringing the motion to compel against SCC.  If SCC were at all confused, it should have produced documents in accordance with the statutory definitions.

## DISPOSITION

The petition for a writ of mandate is denied.  Western shall recover costs incurred in this proceeding.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.

19

Filed 1/6/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SCC ACQUISITIONS, INC.,<br><br>   Petitioner,<br><br>     v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>   Respondent;<br><br>WESTERN ALBUQUERQUE LAND HOLDINGS, LLC,<br><br>   Real Party in Interest. | G050546<br><br>(Super. Ct. No. 30-2012-00574257)<br><br>ORDER GRANTING REQUESTS FOR PUBLICATION |

Real party in interest and the California Bankers Association have requested that our opinion, filed on December 11, 2015, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(2), (3), (4), and (5). The requests are GRANTED. The opinion is ordered published in the Official Reports.


                             FYBEL, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

IKOLA, J.