Filed 9/21/16  Brewer Corp. v. Point Center Mortgage Fund CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BREWER CORPORATION et al.,<br><br>   Plaintiffs and Respondents,<br><br>   v.<br><br>POINT CENTER MORTGAGE FUND I, LLC,<br><br>   Defendant and Appellant. | D068863<br><br><br><br>(Super. Ct. No. 37-2007-00074230-CU-BC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, William R. Nevitt, Jr., Judge.  Affirmed.

Law Offices of Jeffrey S. Benice and Jeffrey S. Benice for Defendant and Appellant.

Niddrie Adams Fuller and David A. Niddrie, for Plaintiffs and Respondents.

Brewer Corporation, Brady Company/San Diego, Inc. (Brady), Dynalectric Company (Dynalectric) and Division 8, Inc. (Division 8) (collectively the Brewer creditors) obtained a judgment against defendant Point Center Financial, Inc. (PCF) in the

amount of $2,788,416.06. In subsequent proceedings to enforce the judgment, the trial court granted the creditors' motion to impose liability on third party Point Center Mortgage Fund I, LLC (PCMFI) and awarded attorney fees and costs incurred in pursuing the motion. PCMFI appeals that order, contending that because it was not properly served with the notice of levy, the order is void. PCMFI asserts alternatively that the court erred in finding it did not have good cause under Code of Civil Procedure section 701.010[1] to fail to comply with the levy. We reject PCMFI's contentions and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

This case arises from the development of a condominium project, Mi Arbolito, near the north end of Balboa Park in San Diego, California. (*National Financial Lending, LLC v. Superior Court, supra,* 222 Cal.App.4th at p. 268.) The plaintiffs/creditors are contractors who provided material and work on the project but were not paid in full. (*Ibid.*) As a result, the Brewer creditors sued both the developer, Mi Arbolito, LLC, and the construction lender, PCF. Mi Arbolito, LLC filed for bankruptcy, but the Brewer creditors pursued their claims against PCF and obtained the nearly $2.8 million judgment. (*Ibid.*)

---

1   All undesignated statutory references are to the Code of Civil Procedure.

2   Some relevant background, which was not provided by PCMFI, is taken from this court's earlier opinion in a related appeal: *National Financial Lending, LLC v. Superior Court* (2013) 222 Cal.App.4th 262.

2

After the entry of judgment, PCF appealed but did not stay the execution of judgment by posting an undertaking.  After attempting to negotiate an informal resolution of the judgment with PCF, the Brewer creditors commenced collection proceedings.  The creditors obtained numerous orders for and conducted debtors' examinations on various PCF representatives.  In addition, the Brewer creditors levied on third-party PCMFI, an entity managed by PCF, and served the levies on April 26, 2012 and May 2, 2012.  Under the relevant Code of Civil Procedure provisions, PCMFI was required to respond to those levies by (1) turning over the monies owed to PCF to the Orange County Sheriff, or (2) submitting a memorandum of garnishee within 10 days.  (§§ 701.010, 701.030.)  PCMFI, however, failed to respond.

As a result, the Brewer creditors sought an order appointing a postjudgment limited receiver for PCF.  On February 1, 2013, the trial court entered its order appointing a limited postjudgment receiver for judgment debtor PCF.  The order authorized the receiver to, among other things, investigate and prepare an accounting of all monies, business records, assets and liabilities of PCF, as well as PCF-managed limited liability companies like PCMFI.  PCF, however, precluded the receiver from reviewing the books of PCMFI, asserting the limited receivership did not provide the receiver with such authority.  The receiver filed an ex parte application, setting a hearing for February 20, 2013, to clarify the February 1, 2013 receivership order.

One day before the hearing on the receiver's ex parte application, PCF filed for Chapter 11 bankruptcy in the United States Bankruptcy Court, Central District of California.  Thereafter, the Brewer creditors sought relief from the automatic bankruptcy

3

stay in order to pursue litigation against various third-party entities, including PCMFI, for levy violations. After a contested hearing, the bankruptcy court granted the Brewer creditors' requested relief and permitted pursuit of levy violations by third-party entities in the Superior Court case from which this appeal arises.

During the collections proceedings that occurred before PCF's bankruptcy filing, the Brewer creditors discovered that PCMFI paid PCF and two other entities controlled by PCF—CalComm Capital, Inc. (CalComm) and National Financial Lending, LLC (NFL)—accrued management fees under a fraudulent management assistance agreement that was put in place to evade the Brewer creditors collection attempts. The Brewer creditors also discovered that after PCMFI was served with the first notice of levy on April 26, 2012, it transferred over $3 million to CalComm, NFL and PCF in violation of the levies.

The evidence uncovered by the Brewer creditors showing the unlawful transfers included: The testimony of PCF's CFO, Gwen Melanson, who confirmed in her judgment debtor's examination that under its operating agreement PCFMI was contractually obligated to pay PCF accrued management fees, the timing and amounts of which were determined solely by PCF; the testimony of PCF's general counsel, Dale Martin, who in his deposition by PCF's bankruptcy trustee stated that he was directed by PCF's president and sole shareholder, Dan J. Harkey, to create backdated management assistance agreements between PCMFI, NFL and CalComm in order to shift loan servicing responsibilities away from PCF to the other entities and to shield PCF assets

4

from the Brewer creditors enforcement efforts[3]; and (3) Harkey's own admission in a related proceeding in Orange County Superior Court that CalComm was created to avoid the Brewer creditors.

On July 7, 2015, the Brewer creditors filed a joint motion seeking to impose liability against PCMFI under section 701.020 for its willful violation of the April 26, 2012 and May 2, 2012 notices of levies.[4] PCMFI opposed the motion by asserting it was not properly served with the notices of levies and writs of execution because the process server did not personally serve Harkey, who was its designated agent for service of process.[5]

On August 17, 2015, the trial court granted the motion and issued an order finding that PCMFI "willfully refused to comply with the lawful Notices of Levy" and that PCMFI failed to show good cause for its noncompliance. The court further found that PCMFI's knowing and willful refusal to comply with the levies was sufficient to impose liability and to award attorney fees and costs against PCMFI. The order states that each Brewer creditor is to "have judgment against PCFMFI" in specified amounts of liability:

---

[3]     Melanson made the same admission during PCF's bankruptcy proceedings, testifying that monies were transferred to NFL to be used for the benefit of PCF to circumvent the Brewer creditors' levies.

[4]     Brady brought the same motion against NFL in July 2013 and NFL opposed the motion on the same grounds PCMFI opposed the motion underlying the order that it appeals here. On May 30, 2014, the trial court granted the motion to impose liability on NFL, concluding that Brady had "shown substantial compliance" with the applicable service requirements.

[5]     PCMFI's appendix includes a declaration of Harkey in support of its opposition to the motion, but not the opposition brief itself.

$1,560,305.77 to Brady; $920,110.55 to Dynalectric; $401,164.11 to Division 8; and $168,885 to Brewer. The court's order also retained jurisdiction to award attorney fees and costs to the Brewer creditors, in an amount according to proof, for time spent litigating the motion.

## DISCUSSION

PCMFI asserts the order imposing liability must be reversed because the Brewer creditors failed to properly serve PCFMI with the notices of levy, and that even if it was properly served the evidence below showed good cause for PCFMI's failure to respond. The trial court made its order finding the levies were adequately served after reviewing the extensive record of the trial court proceedings. On appeal, PCFMI has not produced the full record the trial court reviewed. To the extent the court relied on documents not before us, we are hampered and we cannot presume error from an incomplete record.[6] (*In re Kathy P.* (1979) 25 Cal.3d 91, 102.)

---

[6] The Brewer creditors note that if the order at issue "is merely 'an intermediate ruling,' the court's order in 'nonapealable.' " They do not, however, provide any explanation as to why this order is not final and nothing in the record before this court establishes further proceedings are contemplated on the issues raised by the appeal. (See *SCC Acquisitions, Inc. v. Superior Court* (2015) 243 Cal.App.4th 741, 748 ["Under section 904.1, subdivision (a)(2), an appeal may be taken from an order made after an appealable judgment. . . . . To be appealable, a postjudgment order must satisfy two requirements: (1) the issues raised by the appeal from the order must be different from those arising out of the appeal from the judgment, and (2) the order must affect, enforce, or stay execution of the judgment."].)

I

A

On the record we do have, PCFMI has not shown error with respect to the trial court's finding that the levies were properly served. Section 684.110 states "if legal process is required to be personally served under this title, service shall be made in the same manner as a summons is served under Chapter 4 (commencing with Section 413.10) of Title 5." (§ 684.110, subd. (a)(1).) Limited liability companies, such as PCFMI, may be served in the same manner as a summons served on a corporation, which may be served by delivering a copy of the summons and complaint to the person designated as agent for service of process. (Corp. Code, § 17061, subd. (a); § 416.10, subd. (a).)

In addition, section 415.20, subdivision (b) provides for substitute service: "In lieu of personal delivery of a copy of the summons and complaint to the person to be served as specified in Section 416.10 . . . a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office or . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. When service is effected by leaving a copy of the summons and complaint at a mailing address, it shall be left with a person at least 18 years of age, who shall be informed of the contents thereof. Service of a summons in this manner is deemed complete on the 10th day after the mailing."

"In deciding whether service [is] valid, the statutory provisions regarding service of process ' " 'should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant.' " ' [Citation] Thus, substantial compliance is sufficient." (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1436-1437.) Where the plaintiff has filed a proof of service, which, on its face, states that the defendant was validly served, "[s]uch proof presumptively establishes the fact of proper service, but it may be impeached and the lack of proper service shown by contradictory evidence." (*M. Lowenstein & Sons, Inc. v. Superior Court* (1978) 80 Cal.App.3d 762, 770; see *Dill v. Berquist Construction Co.*, at pp. 1441-1442 [filing a proof of service that complies with the statutory requirements creates a rebuttable presumption that service was proper].) The trial court's credibility determinations are binding on us on appeal. (*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 421.)

B

PCFMI concedes that Harkey was its agent for service of process at the time the notices of levy were served. Further, the evidence before the trial court sufficiently established that the service of the levies complied with section 415.20, subdivision (b). The Brewer creditors showed that the notices were served on the person in charge of the offices listed with the California Secretary of State as Harkey's address for service of process, 7 Argonaut, Aliso Viejo, California, and that the notices were mailed to Harkey at the same address the following day.

8

PCFMI's argument that the service of process failed because " 'Jane Doe' is not the designated agent of PCMFI" is not well taken. "The evident purpose of . . . section 415.20 is to permit service to be completed upon a good faith attempt at physical service on a responsible person, plus actual notification of the action by mailing the summons and complaint to the appropriate party." (*Khourie, Crew & Jaeger v. Sabek, Inc.* (1990) 220 Cal.App.3d 1009, 1013.) Here, the proof of service showed the substitute service was facially valid. The burden, therefore, was on PCMFI to present contradictory evidence to the trial court. It failed to do so, and PCFMI presents no basis on appeal to disturb the trial court's finding.[7]

## II

PCMFI also asserts that even if service was adequate, the order must be reversed because PCFMI had good cause under section 701.010[8] to avoid the levy. Specifically,

_____

[7] PCFMI also asserts, without any supporting authority or argument, that the notice of levy was procedurally defective because a registered process server is "prohibited from levying on[] 'all personal property in which the judgment debtor has any interest, including without limitation, any and all accounts payable to the judgment debtor.' " We decline to address this point. (See *Nelson v. Avondale Homeowner's Assn.* (2009) 172 Cal.App.4th 857, 862 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].)

[8] Section 701.010 provides in full: "(a) Except as otherwise provided by statute, when a levy is made by service of a copy of the writ of execution and a notice of levy on a third person, the third person at the time of levy or promptly thereafter shall comply with this section. [¶] (b) Unless the third person has good cause for failure or refusal to do so: (1) The third person shall deliver to the levying officer any of the property levied upon that is in the possession or under the control of the third person at the time of levy unless the third person claims the right to possession of the property. (2) To the extent that the third person does not deny an obligation levied upon, or claim a priority over the

9

PCMFI asserts it had good cause for its noncompliance because none of the funds it transferred to CalComm after the service of the levies and writs of executions belonged to PCF. PCFMI, however, fails to provide us with any legal authority or evidentiary support for this contention.[9] Given the status of the record before us, we will not second guess the trial court's determination that PCFMI lacked good cause to avoid the levies.[10] (See *Bennet v. McCall* (1993) 19 Cal.App.4th 122, 127 ["The appellant must affirmatively demonstrate error by an adequate record. In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court."].)

---

judgment creditor's lien, the third person shall pay to the levying officer both of the following: (A) The amount of the obligation levied upon that is due and payable to the judgment debtor at the time of levy. (B) Amounts that become due and payable to the judgment debtor on the obligation levied upon during the period of the execution lien. (3) If the third person makes a delivery or payment to the levying officer pursuant to this section, the third person shall execute and deliver any documents necessary to effect the transfer of the property. [¶] (c) For the purposes of this section, 'good cause' includes, but is not limited to, a showing that the third person did not know or have reason to know of the levy from all the facts and circumstances known to the third person."

[9]     Further, as the Brewer creditors point out, there is no indication in the record before this court that PCFMI raised this argument in the trial court. In the absence of such a showing, the issue is forfeited. (*Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1065-1066.)

[10]     Because we find no error in the trial court's order assigning liability, PCFMI's assertion that no attorney fees or costs are recoverable is moot.

DISPOSITION

The order is affirmed.

BENKE, Acting P. J.

WE CONCUR:


IRION, J.


PRAGER, J.*

---

*       Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11