Filed 11/29/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FINANCE HOLDING COMPANY, LLC, | D072910 |
| Respondent, | |
| v. | (Super. Ct. No. 37-2014-00084275-CU-CL-CTL) |
| THE AMERICAN INSTITUTE OF CERTIFIED TAX COACHES, INC., | |
| Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge. Reversed and remanded with directions.

Dental & Medical Counsel and Mukesh Advani for Appellant.

Law Office of David Sean Dufek and David Sean Dufek for Respondent.

Finance Holding Company, LLC (Finance) obtained a judgment against Dominque Molina for about $50,000 plus interest and attorney fees. In judgment enforcement proceedings, Finance sought documents from Molina's employer, The American Institute of Certified Tax Coaches, Inc. (Institute). Finance requested

numerous categories of business, tax, and bank records, without limiting the request to information relevant to Molina. The court overruled the Institute's objections and ordered the Institute "to produce for inspection and copying all the demanded documents."

On appeal, the Institute contends the document production order is overbroad under the statute governing third party discovery in judgment enforcement proceedings. (Code Civ. Proc., § 708.120.)[1] Finance responds that the order is not an appealable final order, and therefore we should dismiss the appeal. On the merits, Finance contends the document production order was proper under related statutes and/or the court's equitable authority in judgment collection proceedings.

We conclude the order is appealable. We also determine the order is statutorily overbroad, and the court did not have the authority to order the expansive document production that went far beyond the statutory guidelines. We remand for the court to narrow the order to require production only of those documents pertaining to Molina's compensation, property, or services, and/or the Institute's debts owed to Molina.

FACTUAL AND PROCEDURAL BACKGROUND

Accountonit, LLP entered into a contract with a bank for a $50,000 credit line, and Molina signed a personal guaranty to repay borrowed sums. In January 2014, Finance, as the bank's assignee, sued Molina alleging the borrowed funds had not been repaid. After a trial, the court entered judgment in Finance's favor for $49,958.74 plus prejudgment

---

[1] All statutory references are to the Code of Civil Procedure.

interest and attorney fees. Molina appealed, and this court affirmed the judgment in May 2016. (*Finance Holding Co., LLC v. Molina* (May 19, 2016, D067952) [nonpub. opn.].)

While the appeal was pending, Finance sought to enforce the judgment and engaged in "substantial collection related activity." In November 2015, Finance's counsel conducted Molina's judgment debtor examination, during which Molina stated she worked for the Institute as an instructor, and her compensation consisted solely of medical insurance benefits and $4,500 in monthly rental payments for her residence. She denied an ownership interest in the Institute, that she was an officer of the Institute, or that the Institute owed her any money. Molina said she was separated from her husband, and had no assets other than a vehicle.

About 16 months later, Finance moved for a judgment debtor examination of the Institute and the court signed an order scheduling the examination. The order attached a document titled "DOCUMENTS AND THINGS TO BE PRODUCED," listing 15 categories of requested documents, including (for the past five years) all of the Institute's bank records, federal and state tax returns, deposit accounts, business books and records, financial statements, documents from the California Employment Commission, sales tax documents, retirement plan information, and credit card statements.

This document request read in full:

> "All discoverable documents in your possession, custody, or control relating or relevant to any assets in which [Molina] may hold, including but not limited to any interest in [the Institute], and which might be used to satisfy the Judgment entered in this cause, including but not limited to the originals or true and correct copies of the following items:

"1. Any and all checkbooks, cancelled checks, account statements, deposit slips or trust vouchers for any and all bank accounts, wherever situated, existing for the benefit of or in the name of [the Institute] individually, jointly, beneficially or in trust with any other individuals or entities for the past five (5) years.

"2. Any and all income tax returns, gift tax returns, estate tax returns, partnership information returns, or other tax returns, whether state or federal, filed by or signed in any capacity by [the Institute], individually or jointly with any other individuals or entities, whether such returns be individual or as a corporation, for the past five (5) years, including any estimates of income tax and any and all records of taxable income from any of these individuals or entities during the current tax year and any other years for which such returns have not yet been filed.

"3. Any and all contracts, partnership agreements, limited partnership agreements, or any other agreements, of whatever kind or character, entered into by [the Institute]—Individually or jointly with [Molina], for the performance of services or other acts for which is in any way possible that [Molina] will or may receive any compensation or any other thing of value for such services for the past five (5) years.

"4. Any and all check books, cancelled checks, account statements, deposit slips, pass books trust vouchers, and all other written documentation of the existence of any and all bank accounts, savings accounts, trust folios, credit union deposits, certificates of deposit, or safety deposit boxes in which funds or real or personal property or any other assets, of whatever kind or character, in any way relating to the business operations or personal finances of [the Institute] have been deposited, kept, or maintained, withdrawn or otherwise recorded in any manner at anytime during the past five (5) years.

"5. Any and all books or records, of whatever kind or character, maintained by [the Institute's] agents, attorneys, business manager, accountants or other representatives, in any way reflecting the financial condition of [Molina] or any entity in which [Molina] has ever participated as an officer, director, owner, or member, including, but not limited to notes payable, notes receivable, accounts receivable, accounts payable, financial statements, periodic

4

and annual income statements, balance sheets, cash receipts and disbursement journals, profit and loss Statements, general ledgers, statements of changes in financial position, statements of changes in shareholders' equity, and any and all other financial information in any way relating to any of [Molina's] individual or personal finances during the past five (5) years.

"6. Any statement of the financial condition of [the Institute] furnished or exhibited to any person, institute or business organization during the past two (2) years.

"7. All franchise tax returns, filed in the name of [the Institute].

"8. All documents filed with the Internal Revenue Service, including, but not limited to, IRS Form 941, pertaining to quarterly earnings, tax withholdings, FICA withheld, and the portion of FICA withheld on behalf of [the Institute].

"9. All documents filed with the California Employment Commission filed by [The Institute] on behalf of [Molina] for Unemployment Tax paid to the State of California.

"10. All documents filed with the Internal Revenue Service by [the Institute] on behalf of [Molina], including, but not limited to, IRS Form 941, pertaining to Federal Unemployment Tax.

"11. All documents filed with the State of California by [the Institute] on behalf of Defendant pertaining to Sales Tax collected.

"12. All documents by [the Institute] relating to the current status of Defendant including, but not limited to, open bank accounts, deeds, accounts receivable, accounts payable, and rental of office space and equipment.

"13. The documents evidencing all IRA, SEPP, Keogh, 401K, 403B, Roth, or other retirement plans held by or for benefit of Defendant, including but not limited to all statements pertaining to any such accounts for the past four (4) years.

"14. The documents evidencing Defendant's contributions to any IRS 529b plans during the preceding five (5) years.

5

"15. With regard to every credit card and bank card owned or controlled by [the Institute] that Defendant has used during the preceding five (5) years, the monthly billing statements for each such card pertaining to that time period."

On May 10, 2017, the Institute's counsel notified Finance it would not provide "information about the Institute's finances outside of that which directly relates to Ms. Molina's compensation." The Institute's counsel attached a letter from the Institute's accounting manager addressed to Molina, stating Molina was "not permitted to disseminate any information not directly related to your compensation without Board approval."

Two days later, Molina appeared at a debtor examination on behalf of the Institute, and said that after her November 2015 examination, her job title changed and she was now the Institute's chief executive officer (CEO). She said she had retained her instructor duties, and her current compensation consisted solely of $4,900 rental payments to her landlord (a slight increase from the former monthly payments). She said the Institute also reimburses her for business travel (which involves primarily teaching classes in various locations). She denied any ownership interest in the Institute, and said the Institute no longer pays for her insurance or any other benefits. She identified the location of the Institute's bank accounts; testified that the Institute was governed by an independent board of directors; and said she did not have the authority to write checks or use the Institute's credit card.

The Institute produced only two documents responsive to Finance's document request: (1) an unsigned two-page agreement ("Work Agreement") dated March 3, 2012,

6

between Molina and the Institute setting forth the terms of Molina's services and compensation, including that the Institute would pay Molina $4,500 in "monthly residence lease payment[s]"; and (2) a four-page list purporting to show the monthly rental payments to Molina's landlord from mid-2012 through 2016. Molina said she did not bring any other documents responsive to the document request under directions from the Institute's officers and attorneys.

About two weeks later, Finance applied for an order compelling the Institute to produce the requested documents. In support, Finance submitted the declaration of its counsel, David Dufek, who claimed that during Molina's November 2015 debtor examination, she "lied under oath" concerning "her relationship with [the Institute]." Dufek said that given Molina's (unspecified) misrepresentations and the fact Molina testified she has no assets other than wages paid by her employer, Finance "need[s]" the requested documents to determine the true amount of Molina's compensation and "the actual amount and location of [Molina's] assets that are being held by her in the hands of her 'employer.' " He said that without these business records, "there is simply no way to determine what assets are available from [Molina's] employer to satisfy the judgment." Dufek alleged "based upon . . . information and belief" that the Institute "is actively assisting [Molina] to conceal her assets . . . ."

In the application, Finance also said that in September 2016 it had served the Institute with an earnings withholding order, but the Institute had failed to comply by garnishing Molina's wages (the admitted monthly rent payments). Finance requested the

7

court to direct the Institute to pay the outstanding amount due under this order, which it calculated to be $9,800. Finance argued that the court had the authority to order the Institute to pay this amount under section 780.180, subdivision (a), which provides a procedure for a court to determine the validity of a judgment creditor's claim against a third party under certain circumstances. Finance also asked the court to order that the Institute comply with the wage assignment order in the future by paying Finance $1,225 every month (based on Molina's admitted $4,900 current monthly wages).

In opposition to the motion, the Institute argued: (1) the document requests exceed the permissible scope for a third party examination; (2) it had never been served with an earnings withholding order; and (3) Finance's claims that the Institute is assisting Molina to conceal her assets were unsupported.

The Institute proffered the supporting declaration of its corporate secretary, Elizabeth Gonzalez, who said the Institute is an Ohio corporation headquartered in San Diego, and was formed in August 2009. She said the Institute "is an independent, not-for-profit corporation which trains and certifies tax professionals in the philosophy of proactive tax planning. The organization . . . administers the Certified Tax Coach designation, . . . [and] offers a network of resources, ongoing education, and joint venture opportunities to its members."

Gonzalez attached to her declaration a copy of the most recent Statement of Information filed with the California Secretary of State. The document identified the Institute's officers as Molina (CEO), Gonzalez (secretary), and Linda Webb (treasurer).

8

Gonzalez said Molina was not an authorized signer on the Institute's bank accounts or credit card. She identified the six individuals who are current members of the Institute's board, and said "[t]he board meets on a regular basis . . . to discuss and decide on matters relating to the [Institute's] affairs . . . , including all legal matters . . . ." Gonzalez said Molina is expected to "carry out board decisions on a day-to-day basis." Gonzalez also said Molina is not compensated for her services as an officer, and that she is paid for her instructor duties solely in the form of rental payments and reimbursement for travel expenses. Gonzalez said that other than the two produced documents (the Work Agreement and the rental payments printout), the Institute "does not have any other documents pertinent to Ms. Molina's compensation in its care, custody and control."

On the wage assignment order, Gonzalez said: "[The Institute] has no record of ever having received a wage garnishment order regarding Ms. Molina in September 2016 or at any other time. . . . Had [the Institute] received such a wage garnishment order, it would have responded, but none was received."

In reply, Finance produced a copy of the proof of service reflecting the sheriff's service of the earnings-withholding order to an individual at the Institute's address. Finance also confirmed it was not seeking the documents on an alter ego theory, stating it "does not dispute that [the Institute] is an entity separate from Molina"; it has never raised the alter ego issue; and was not presenting the "alter ego theory as a basis for granting the order to compel."

9

After a brief hearing (not recorded by a court reporter), the court entered a written order granting Finance's motion to compel production of the documents. The court first noted that Molina has been "lead[ing] the judgment creditor on a merry chase while paying zero toward satisfaction of the judgment." The court then stated: "Generally speaking, the rules of decision are set forth in . . . section 708.110 [et seq.] [¶] . . . [¶] The motion is granted in full. [The Institute] is ordered **not later than August 29, 2017,** to produce for inspection and copying *all* of the demanded documents. In the event [the Institute] contends there are no responsive documents, [the Institute] must so state, in writing and under oath, and state the reason there is no responsive document, on a category by category basis. This statement under oath must be subscribed by a duly authorized corporate representative other than the judgment debtor." (Italics added.) In this order, the court did not rule on Finance's request to enforce the wage garnishment order.

The Institute filed a notice of appeal on August 21, 2017, one week before the document production deadline.

DISCUSSION

I. *Appealability*

The existence of an appealable judgment or order is a jurisdictional prerequisite to an appeal. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.) The right to appeal is "wholly statutory." (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51

10

Cal.4th 1, 5 (*Dana Point*).) A trial court's order is appealable only when a statute permits the appeal. (*Ibid.*; *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.)

Section 904.1, subdivision (a)(2) provides that an order made after an appealable judgment is itself appealable. Interpreting this code section, the California Supreme Court has recognized certain prerequisites to the appealability of postjudgment orders: (1) the issues raised by the postjudgment order must be different from those arising from an appeal from the judgment; (2) the order must either affect the judgment or relate to it by enforcing it or staying its execution; (3) the underlying judgment must be final; and (4) the challenged order must be a final determination of the rights of the parties and not be appealable as part of later proceedings. (See *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651 & fn. 3, 652-656 (*Lakin*).)[2]

The parties do not dispute that this appeal satisfies the first three prerequisites. But they disagree whether the fourth element is met. Finance contends the challenged order is not a final determination of the parties' rights because "it is abundantly clear that it is *unclear* whether the trial court . . . will be required to issue further discovery orders." The Institute responds that there are "no further rulings which the court could make regarding the [document production] compliance order, and therefore, [the Institute] is entitled to appeal and challenge the merits of the trial court's decision." Based on the

---

[2] The *Lakin* court primarily discussed the fourth (finality) element in the context of analyzing the second element (order must "affect" or "relate" to judgment). But for purposes of clarity, we find it helpful to describe these factors as separate elements.

California Supreme Court's definition of finality in the context of appealable orders, we conclude the Institute is correct.

A. *Judicial Decisions on Appealability of Postjudgment Third Party Discovery Orders*

Before we discuss the California Supreme Court authority, we note this is not the first time our court has addressed the issue of appealability of postjudgment third party discovery orders in judgment enforcement proceedings. Five years ago, this court issued two opinions six days apart by different panels that reached different conclusions on this issue. (*Macaluso v. Superior Court* (2013) 219 Cal.App.4th 1042 (*Macaluso*); *Fox Johns Lazar Pekin & Wexler v. Superior Court* (2013) 219 Cal.App.4th 1210 (*Fox Johns*).)

First, in *Macaluso*, the trial court issued a postjudgment order compelling a third party to answer questions at a judgment debtor examination and comply with a subpoena duces tecum by producing documents in the judgment enforcement proceeding. (*Macaluso, supra,* 219 Cal.App.4th at p. 1049.) Instead of complying with the order, the third party appealed. (*Ibid.*) In response, the trial court entered an order to show cause regarding contempt, finding the order was not appealable and therefore the appeal did not deprive the court of jurisdiction to enforce its order. (*Id.* at pp. 1046-1047.) The third party filed a writ petition seeking to stay the proceeding pending the appeal. (*Id.* at p. 1047.) The *Macaluso* court issued an order to show cause, and considered "the narrow issue of whether the order was an appealable order within the meaning of section 904.1, subdivision (a)(2)." (*Id.* at p. 1045.)

12

Relying primarily on two California Supreme Court decisions, *Lakin, supra,* 6 Cal.4th 644 and *Dana Point, supra,* 51 Cal.4th 1, the *Macaluso* court held the order compelling a third party to produce requested documents "was a final order from which an appeal may be taken." (*Macaluso, supra,* 219 Cal.App.4th at p. 1049.) The court noted the challenged order "direct[ed] [the third party] to perform an act—to produce records claimed to be confidential or privileged" that was "not subject to further resolution in future proceedings." (*Ibid.*) Analogizing the case to *Dana Point* (which concerned the finality of a legislative subpoena order), the court stated the order compelling production "represented a final determination that overruled the subpoenaed party's objections to the document request and mandated that the materials described in the subpoena be produced . . . ." (*Macaluso*, at p. 1049.) The court stressed that the order "left no issue for future consideration except the subpoenaed party's compliance or noncompliance with the terms of the order." (*Ibid.*) The court alternatively found the order was appealable under the collateral order doctrine. (*Macaluso, supra*, 219 Cal.App.4th at p. 1049; see *Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1084.)

Six days later, a different panel of this court filed *Fox Johns*, in which a third party (the debtor's law firm) appealed an order requiring it to appear and produce documents as a third party witness in a judgment debtor examination. (*Fox Johns*, *supra*, 219 Cal.App.4th at pp. 1214-1215.) The *Fox Johns* court found the order was not appealable (but reached the merits and granted relief by treating the appeal as a writ petition). (*Id.* at pp. 1215-1218.)

On the appealability issue, the *Fox Johns* court agreed with the judgment creditor's arguments that the orders were "preliminary orders pertaining to discovery, adjudicate[d] no rights, and thus are not appealable." (*Fox Johns*, *supra*, 219 Cal.App.4th at p. 1215.) The court did not discuss California Supreme Court decisions on the appealability/finality issues (e.g. *Lakin* and *Dana Point*), and instead relied on two older Court of Appeal decisions, *Rogers v. Wilcox* (1944) 62 Cal.App.2d 978 (*Rogers*) and *Ahrens v. Evans* (1941) 42 Cal.App.2d 738 (*Ahrens*). Quoting *Rogers* (which concerned documents sought from the debtor and not from a third party witness), the *Fox Johns* court stated the discovery "orders were 'one of the steps taken in the course of a proceeding to obtain' information pertaining to a judgment debtor's assets. [Citation.] '[They] did not constitute . . . final order[s]. A court should not be interrupted in the exercise of its jurisdiction until its judgment has become final. Error in the course of a proceeding does not warrant a review.' " (*Fox Johns,* at p. 1215.) The *Fox Johns* court cited *Ahrens* (which did involve a third party witness) in support of its additional observation that a postjudgment order denying a motion to quash a subpoena duces tecum is not appealable. (*Fox Johns,* at p. 1216.) The *Fox Johns* court rejected the appellants' argument that *Rogers* and *Ahrens* are no longer viable law because they were decided under a former version of section 904.1. (*Fox Johns,* at p. 1216.)

With respect to the *Macaluso* decision, *Fox Johns* stated in a footnote: "We are aware of the recent opinion from this court issued after oral argument here, wherein the court held that a third party may appeal an order overruling all of the third party's

14

objections to the subpoena and granting a motion to compel compliance with the subpoena. . . . We think the better approach here, on the unique facts before us where it is not clear if the superior court will be issuing further orders regarding the very discovery at issue, is to treat the appeal like a petition for writ of mandate." (*Fox Johns supra*, 219 Cal.App.4th at p. 1218, fn. 4.)

Four years later, the Second District Court of Appeal considered an issue similar to that raised in *Macaluso* and *Fox Johns* concerning the appealability of a postjudgment discovery order directed to a third party in judgment enforcement proceedings. (*Yolanda's, Inc. v. Kahl & Goveia Commercial Real Estate* (2017) 11 Cal.App.5th 509, 512-513 (*Yolanda's*).) The *Yolanda's* court examined *Fox Johns* and *Macaluso*, and noted the "opposite results" reached in these decisions. (*Yolanda's*, at p. 512.) The court also discussed *Fox Johns*'s attempt to distinguish its case from *Macaluso*, but said this "distinction escapes us." (*Yolanda's*, at p. 513.) Without extended reasoning, the *Yolanda's* court then stated that it agreed with the result in *Fox Johns* and concluded the discovery order before it was not appealable. (*Yolanda's*, at p. 513.) The court said: "Because it is rarely certain whether the trial court will be issuing further discovery orders, the better approach in general is to treat such orders as not appealable. Allowing an appeal of each discovery order will invite unnecessary delay and facilitate the concealment of assets. So we join our colleagues in *Fox Johns* and part company with them in *Macaluso*." (*Ibid*.) The court then decided to treat the appeal as a petition for writ of mandate. (*Ibid.*)

15

B. *Evaluation of Appealability of Postjudgment Third Party Discovery Orders*

We agree with *Yolanda's* that it can be difficult to fully harmonize *Macaluso* and *Fox Johns*. Additionally, even if there was a logical way to do so, the different approaches to resolving a similar appealability issue leaves uncertainty in the law. Viewing the language of each opinion, a reasonable practitioner seeking to challenge a third party discovery order in judgment enforcement proceedings would have some reasonable doubt as to whether an appeal is required or whether a writ petition is the sole review vehicle.

Thus, we think it helpful to provide additional clarification on the issue. In doing so, we note that although the *Yolanda's* court's observations regarding the benefits of the *Fox Johns* approach arguably make sense as a policy matter, the issue before us is statutory and not an issue that can be determined based on policy choices or perceived better outcomes. Certainly, there are policies on both sides of the issue as to whether a postjudgment order compelling a third party to produce documents as part of a judgment enforcement proceeding should be appealable or whether the order can be immediately challenged only by a writ petition. For example, although an appeal pertaining to third party discovery orders could cause unnecessary delays in judgment enforcement, a conclusion that a discovery production order is not appealable because other proceedings *might* take place could forever eliminate the third party's appeal rights. Evaluating these policy outcomes is for the Legislature. Our role is to construe and apply the relevant appealability statutes, as they have been interpreted by our high court.

16

We thus start with the language of the statute. Section 904.1, subdivision (a) states in relevant part: "An appeal, other than in a limited civil case, may be taken from any of the following: [¶] (1) From a judgment [with certain exceptions]. . . . [¶] (2) From an order made after a judgment made appealable by paragraph (1)."

Interpreting these provisions, the *Lakin* court held a postjudgment order denying attorney fees under former section 2033, subdivision (o) was an appealable order. (*Lakin, supra,* 6 Cal.4th at p. 656.) In reaching this conclusion, the court discussed the prior judicial requirement that for a postjudgment order to affect or relate to the judgment and thus be appealable, it must add to or subtract from the judgment. (*Id.* at pp. 651-653.) The *Lakin* court ultimately decided the reasoning underlying this rule is "incomplete" and does not necessarily apply in all situations, stating a court should instead more broadly focus on the *relationship* between the challenged order and the judgment, including whether the order is "preliminary to a later judgment." (*Id.* at pp. 652, 654.) The high court explained this concept by discussing various decisions that have held postjudgment orders nonappealable (such as those pertaining to record preparation and new trial motions), and observed: "All these 'postjudgment' orders lacked finality in that they were . . . preparatory to later proceedings. To hold these orders 'nonappealable' merely postponed their appeal until the conclusion of later proceedings; it did not deny it altogether." (*Id.* at p. 653.) The court distinguished these decisions from those finding orders appealable because they were " 'necessarily a final determination of the matter,' eliminating the possibility of appeal." (*Ibid.*) Applying these principles, the *Lakin* court

17

concluded "the [postjudgment] order here in issue . . . is a postjudgment order that affects the judgment or relates to its enforcement *because it determines the rights and liabilities of the parties arising from the judgment, is not preliminary to later proceedings, and will not become subject to appeal after some future judgment*." (*Id.* at p. 656, italics added.)

Seventeen years later, the California Supreme Court was presented with an issue concerning the appealability of an order compelling compliance with a legislative subpoena. (*Dana Point, supra*, 51 Cal.4th 1.) The *Dana Point* court found the order was appealable, rejecting the respondent's arguments that the order was analogous to a prejudgment discovery order and thus not final. (*Id.* at p. 13.) Although the order at issue in *Dana Point* was not a postjudgment order, the court's discussion of finality provides helpful guidance in this case.

The high court began by discussing the meaning of a "final" order or judgment for purposes of appeal: " ' "As a general test . . . it may be said that *where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final*, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory." ' " (*Dana Point, supra*, 51 Cal.4th at p. 5.) Under this test, *Dana Point* found the order compelling compliance with the subpoena was final, explaining: "We have repeatedly held that judgments are final when they leave nothing to the party against whom judgment is rendered except to comply. . . . *The order here does exactly*

18

*that*. It concludes that the [appealing parties] must respond to the subpoenas, subject to a protective order. *At no time does the order contemplate future proceedings nor otherwise indicate that it is not final. Thus, the order is final for purposes of appeal*." (*Id.* at p. 11, italics added.)

Of additional significance here, the high court rejected the respondent's argument that the orders were not final "based on the *potential* for future actions or proceedings." (*Dana Point, supra*, 51 Cal.4th at p. 12.) The court reasoned: "The order directs [appellants] to comply with the subpoenas, thus representing a rejection by the trial court of the various grounds advanced by the [appellants] . . . for refusing to turn over the records. Whether or not the parties haggle over the existence of a particular document does not undermine the finality of the order. Nor does the possibility that the [appellants] might simply defy the order and persist in refusing to turn over the records. Similarly, the possibility of further proceedings regarding the scope of the protective order does not affect the finality of the order. . . . '[T]he question of future compliance . . . is present in every judgment' [citation], and if the potential for the sort of future proceedings described here were the standard for assessing finality, few judgments would ever be final." (*Id.* at pp. 12-13.)

Relying on *Lakin and Dana Point,* the *Macaluso* court found the order compelling a third party to produce documents in a judgment enforcement proceeding was appealable. (*Macaluso*, *supra*, 219 Cal.App.4th at pp. 1047-1050.) The court reasoned: "We perceive no meaningful distinction between the compliance order [in] *Dana Point*

19

. . . and the order from which Macaluso appealed: both orders represented a final determination that overruled the subpoenaed party's objections to the document request and mandated that the materials described in the subpoena be produced, and both orders left no issue for future consideration except the subpoenaed party's compliance or noncompliance with the terms of the order." (*Id.* at p. 1049.) The court emphasized that without treating the order as appealable, Macaluso's appellate rights would likely be extinguished: "Here Macaluso was not a party to an ongoing lawsuit from which he might later be able to appeal and challenge the merits of the ruling on his objections to the subpoena, and the order was not preparatory to a later ruling that would be encompassed in a final judgment from which Macaluso could have appealed. Instead, the order was a final determination that Macaluso was obligated to produce certain documents, and 'no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the [order]. . . . [U]nder *Lakin* and *Dana Point*, the order was appealable." (*Id.* at p. 1050.)

C. <em>Analysis and Conclusion on Appealability Issue</em>

Considering together *Lakin* and *Dana Point*, and consistent with both *Macaluso* and *Fox Johns*, the key test for finality of a third party discovery order in enforcement proceedings is whether the *challenged order* reflects a final determination of the rights or obligations of the parties or whether it contains language showing it is preparatory to a later ruling that will be embodied in an appealable judgment or order. (*Dana Point, supra*, 51 Cal.4th at pp. 5-13; *Lakin supra*, 6 Cal.4th at pp. 652-656; *Macaluso, supra*,

20

219 Cal.App.4th at pp. 1047-1050; *Fox Johns, supra*, 219 Cal.App.4th at p. 1218, fn. 4.) Under this standard, the challenged order here *is* a final determination of the rights between the Institute and Finance regarding the discovery at issue. The order on its face is final. It fully resolves the issue regarding the required disclosure of all requested documents, and does not reserve any issues for later determination. As in *Lakin,* there is no showing the order is "preliminary to later proceedings" or will "become subject to appeal after some future judgment." (*Lakin,* at p. 656.) As in *Dana Point* and *Macaluso*, the fact there may be additional orders relating to the *enforcement* or *scope* of the required document production does not mean this discovery order is not a "final" appealable order.[3] (*Dana Point,* at pp. 12-13; *Macaluso,* at pp. 1048-1049.)

*Fox Johns* does not compel a contrary result. In footnote 4, the *Fox Johns* court described the facts before it as "unique" because it was "not clear if the superior court will be issuing further orders regarding *the very discovery at issue . . . .*" (*Fox Johns, supra*, 219 Cal.App.4th at p. 1218, fn. 4, italics added.) This observation makes sense because portions of the court's challenged orders pertained to the general scope of the third party debtor examination, rather than any specific inquiries.

But to the extent the *Fox Johns* court suggested a discovery order compelling a third party to disclose documents in a judgment enforcement proceeding is never

---

[3] Although not raised by Finance in support of its appealability challenge, we are aware there may be further orders on the wage garnishment issue. However, any such orders would be independent and collateral to the document production order, and thus would not preclude a finding of appealability of the current challenged order.

appealable until the debtor and creditor's disputes have been fully resolved or when there is a mere possibility of future orders, we decline to adhere to this holding. *Fox Johns* based its conclusion on two Court of Appeal decisions from the 1940's that we find unhelpful on the issue before us. (*Fox Johns, supra*, 219 Cal.App.4th at pp. 1215-1216; see *Rogers, supra*, 62 Cal.App.2d 978; *Ahrens, supra*, 42 Cal.App.2d 738.)

*Rogers* concerned an order compelling *the judgment debtor* (not a third party) to appear at debtor examination, which presents different finality issues. (*Rogers, supra*, 62 Cal.App.2d at p. 979.) Unlike a document production order against a third party, an order compelling the judgment debtor's attendance at an examination or to compel the debtor to produce documents can be reasonably viewed as an intermediate step to enforcing the judgment against *that judgment debtor*. (See *SEC Acquisitions, Inc. v. Superior Court* (2015) 243 Cal.App.4th 741, 749-750 (*SEC Acquisitions*) [distinguishing appealability issues with respect to orders against debtor with those against third parties].)

Although *Ahrens* concerned a discovery order pertaining to a third party in judgment enforcement proceedings, the decision is unpersuasive. (*Ahrens, supra*, 42 Cal.App.2d 738.) The *Ahrens* court relied exclusively on a 1919 Court of Appeal decision involving a debtor (not a third party) (see *Frost v. Superior Court* (1919) 41 Cal.App. 580), and neither the *Fox Johns* court nor the *Ahrens* court considered the distinctions between the two situations. (See *Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 871, fn. 8 [case not authority for issues not considered].) Additionally, *Ahrens*'s viability is subject to doubt as the court did not have the benefit of the more

22

recent California Supreme Court authority on finality principles for purposes of appealability.

The order compelling the Institute to produce the requested documents is appealable. We thus turn to the merits of the Institute's challenge to the court's document production order.

## II. *Document Production Order*

The Institute contends the court erred in ordering it to produce documents unrelated to Molina and/or its debts owed to her.

## A. *Section 708.120*

Section 708.120 governs a creditor's right to obtain information from a third party in judgment collection proceedings: "Upon ex parte application by a judgment creditor who has a money judgment and proof by the judgment creditor by affidavit or otherwise to the satisfaction of the proper court that a third person has possession or control of property in which the judgment debtor has an interest or is indebted to the judgment debtor in an amount exceeding two hundred fifty dollars ($250), the court shall make an order directing the third person to appear before the court, or before a referee appointed by the court, at a time and place specified in the order, to answer concerning such property or debt. The affidavit in support of the judgment creditor's application may be based on the affiant's information and belief." (§ 708.120, subd. (a).)

After deciding to treat the appeal as a writ petition, the *Fox Johns* court resolved issues concerning the scope of discovery under this code section. (*Fox Johns, supra,* 219

23

Cal.App.4th at pp. 1218-1223.) Interpreting the statutory language, the *Fox Johns* court held that section 708.120 limits third party discovery in judgment enforcement proceedings to questions pertaining to the third party's control or possession of " 'property in which the judgment debtor has an interest' " or money "owe[d] [to] the judgment debtor." (*Id.* at p. 1220.) The *Fox Johns* court thus determined the trial court erred when it ordered the debtor's attorney to answer questions and to produce documents pertaining to client billings, payments on these billings, and entities that may be related to the client. (*Id.* at pp. 1220-1223.) The court found these matters were unrelated to any of the client's property in the attorney's possession or debts owed to the client, and thus were unauthorized under section 708.120.

We agree with *Fox Johns's* reasoning and conclusion on the scope of third party discovery in judgment enforcement proceedings. Under section 708.120, a creditor is entitled to examine a third party if it convinces the court that the "third person has possession or control of property in which the judgment debtor has an interest or is indebted to the judgment debtor." If this showing is made, "the court shall make an order directing the third person to appear . . . to answer *concerning such property or debt*." (§ 708.120, italics added.) Under its plain meaning, this statutory language provides the trial court with the authority to permit a creditor to seek information regarding the existence of the debtor's property in the third party's possession and/or a debt owed to the debtor. A third party document subpoena must therefore be limited to "confirm[ing] the

24

existence of the subject property [and/or] debt." (*Fox Johns*, *supra*, 219 Cal.App.4th at p. 1222.)

In this case, the order compelling production of the requested documents exceeded the statute's scope. Finance sought *all* of the Institute's business, tax, and bank records during a five-year period. The court essentially ordered the Institute to produce every single sheet of paper (or computer document) that the Institute (or its agents) have produced or maintained over the past five years without any limitation for documents that are relevant to Molina or assets in which she has an interest or any debts owed to her. Finance acknowledged that it was not seeking documents to support an alter ego theory, and it was requesting the information solely to determine the existence or location of Molina's assets, including property or outstanding debts owed to her. On this record, the court did not have the authority to require Institute to produce all of its documents regardless of their relevance to Molina.

Finance argues that *Fox Johns* is distinguishable because that case involved a document request to the debtor's attorneys, and sought information about the law firm's third party clients. This factual distinction does not mean the document production order here was proper. As in *Fox Johns*, the order "permit[ted] discovery far beyond what section 708.120 allows." (*Fox Johns, supra*, 219 Cal.App.4th at p. 1222.)

B. *Finance's Additional Asserted Grounds for Document Production Order*

In its respondent's brief, Finance makes no real attempt to suggest the ordered document production fell within section 708.120's third party discovery rules. Instead, it

25

argues the court's order was appropriate under *other* statutes and/or the court's equitable authority.  (See §§ 708.130, 708.180, 187.)  In *Fox Johns*, we rejected similar arguments, finding section 708.120 "defines the scope of the examination of a third party."  (*Fox Johns, supra*, 219 Cal.App.4th at p. 1220.)  We thus specifically limited "what the third party could be questioned about during the examination" and the documents that could be requested from the third party.  (*Id.* at p. 1221.)  On our review of the cited statutes and section 708.120's plain language, we adhere to this legal conclusion.  As explained below, Finance's reliance on sections 708.130, 708.180, and 187 is misplaced.

*Section 708.130*

Section 708.130 provides generally that witnesses in a judgment debtor examination may appear and testify "in the same manner as upon the trial of an issue." Finance argues that this code section allowed it to conduct the type of broad discovery permitted under prejudgment discovery rules.  We disagree.  Under settled statutory interpretation principles, section 708.130 does not expand a court's powers to order third party discovery under section 708.120.  (See *Fox Johns, supra,* 219 Cal.App.4th at p. 1220-1221.)  Otherwise, there would have been no need for section 708.120.  Because section 708.130 is a general statute pertaining to the conduct of a debtor's examination, and section 708.120 provides specific rules regarding the scope of discovery against a third party in judgment enforcement proceedings, section 708.120 governs the court's discovery order here.  (See *State Dept. of Public Health v. Superior Court* (2015) 60

26

Cal.4th 940, 960-961; *Lake v. Reed* (1997) 16 Cal.4th 448, 464; *People v. Bussey* (2018) 24 Cal.App.5th 1056, 1063.)

*Section 708.180*

Section 708.180 sets forth a procedure that permits a court to make factual findings on the validity of a third party's claim to an interest in property adverse to the judgment debtor and/or a third party's denial of a debt owed to the judgment debtor.[4] (See *Evans v. Paye* (1995) 32 Cal.App.4th 265, 276-280 (*Evans*).) In the proceedings below, Finance did not rely on this statute to seek the documents from the Institute. It requested the court to exercise its authority under section 708.180 only to order the Institute to pay amounts due under Finance's wage garnishment order. As the court was not asked to order discovery under section 708.180 and there is no indication it did so, we cannot affirm the court's discovery order on this basis.

Moreover, even had Finance asserted section 708.180 as grounds for the discovery order, it would not change our conclusion in this case. The Legislature enacted section 708.180 to provide a "less cumbersome" enforcement procedure (as compared to an

---

4    Section 708.180 provides in relevant part: "(a) Subject to subdivision (b), if a third person examined pursuant to Section 708.120 claims an interest in the property adverse to the judgment debtor or denies the debt, the court may, if the judgment creditor so requests, determine the interests in the property or the existence of the debt. The determination is conclusive as to the parties to the proceeding and the third person, but an appeal may be taken from the determination. The court may grant a continuance for a reasonable time for discovery proceedings, the production of evidence, or other preparation for the hearing. [¶] (b) The court may not make the determination provided in subdivision (a) if the third person's claim is made in good faith and [a statutory condition] is satisfied . . . . "

independent creditor's suit) when a third party in bad faith claims an interest in the debtor's property or denies a debt owed by the third party to the debtor. (*Evans, supra*, 32 Cal.App.4th at p. 276.) As explained by the *Evans* court, "section 708.180 expressly authorizes the trial court, in a hearing outside the framework of a creditor's suit, to determine whether the third person in fact [has an interest in the debtor's property or] owes money to a judgment debtor, unless the court finds the third person's" claims or denials are "made in good faith" and a statutory condition is satisfied. (*Id.* at p. 280.) "The third person is afforded due process in a section 708.180 hearing by its provision giving the court discretion to grant a continuance for discovery, the production of evidence, or other preparation for the hearing." (*Ibid*.)

Finance's suggestion that the court's document production order was proper under the broad discovery provisions of section 708.180 is without merit because the Institute has not claimed an interest in any of Molina's property or identified a debt owed to Molina. If Institute later does so, Finance would have the right to bring a motion to trigger a section 708.180 hearing. At that point, both parties would be entitled to conduct further discovery on the relevant issues and have additional time to prepare for the hearing. Finance's request for discovery from the Institute *preliminary to* any section 708.180 procedure cannot be justified by the rules governing a section 708.180 hearing.

### *Section 187*

Section 187 states: "[I]n the exercise of [the court's] jurisdiction, *if the course of proceeding be not specifically pointed out by this Code or the statute*, any suitable

process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code." (Italics added; see *Citizens Utilities Co. of Cal. v. Superior Court of Santa Cruz County* (1963) 59 Cal.2d 805, 813; *Tide Water Associated Oil Co. v. Superior Court of Los Angeles County* (1955) 43 Cal.2d 815, 825-826.) Based on the Legislature's expressed intent in section 708.120 regarding the defined scope of a third party debtor's examination, section 187 is inapplicable. Section 187 does not permit a trial court to ignore statutory limitations on a court's authority. (§ 187; see *Fox Johns, supra,* 219 Cal.App.4th at p. 1221 ["To allow for a wider scope of examination . . . , we would have to read additional language into [section 708.120]. This we cannot do."].)

Relying on *Yolanda's* and section 187, Finance urges us to adopt a broad reading of section 708.120. (*Yolanda's, supra,* 11 Cal.App.5th at pp. 513-515.) The *Yolanda's* court said: "[N]othing in section 708.120 states that it is the only procedure available for examining a third party. In fact, section 708.130 expressly provides otherwise. To the extent section 708.130 may not apply, there is no reason why the court cannot use its power under section 187 to fashion an appropriate procedure. The policy of the law favors the enforcement of judgments. [Citation.] There is no policy favoring the concealment of the judgment debtor's assets from the judgment creditor." (*Id.* at p. 515.)

Even assuming compelling reasons support an expansion of third party discovery in a particular case, we disagree with *Yolanda*'s that courts have the authority to order the discovery beyond the confines of section 708.120. The decision whether to enlarge a judgment creditor's rights to obtain discovery is one for the Legislature and not the

29

courts.  (See *Fox Johns*, *supra*, 219 Cal.App.4th at p. 1221; see also Schechter, *Post-Judgment Examination of Non-Debtor Third Party May Delve Into Alter Ego and Fraudulent Transfer Issues, Despite Narrow Wording of Statute* (Thomson Reuters 2017) 2017-19 Comm. Fin. News NL 38 [noting the conflict between *Fox Johns* and *Yolanda's* on scope of third party judgment enforcement discovery; opining that *Fox Johns* "correctly" interpreted "the current statutes"; and concluding that although the result in *Yolanda's* reflects better public policy, its approach requires an amendment of the relevant statutes].)  The determination involves the examination and balancing of various private interests and public policies, a task best left to the legislative arena.

Moreover, *Yolanda's* is materially distinguishable.  In *Yolanda's,* there was evidence showing the third party entity was controlled by the debtors, and the person most knowledgeable of this third party entity testified in his debtor examination regarding transfers of certain debtor assets, but his counsel refused to allow him to answer questions about where those assets were located, claiming the questions did not specifically concern the third party's current possession of the debtor's property or funds owed to the debtor.  (*Yolanda's, supra*, 11 Cal.App.5th at pp. 511-512.)  After the court ordered the third party to answer the questions based on evidence showing the transfers were allegedly fraudulent, the third party appealed.  The *Yolanda's* court affirmed, holding that even if the questions went beyond the scope of section 708.120, "there is no reason why the court [could not] use its power under section 187 to fashion an appropriate procedure."  (*Yolanda's*, at p. 515.)

The requirement that a third party witness (representing a third party entity allegedly controlled by the debtor) answer direct questions about *specific* transferred property in which the debtor has or had an interest is materially different from requiring a third party (who is not alleged to be an alter ego of the debtor) to produce every single piece of business, bank, and tax document for the past five years without any showing of relevance to the debtor. Accordingly, even if the court here had some form of equitable powers beyond section 708.120, these powers did not support the expansive order in this case.

Finally, Finance contends the court's order was within its broad discretionary authority to rule on discovery matters. (See *SEC Acquisitions, supra*, 243 Cal.App.4th at p. 751.) We agree the applicable review standard is highly deferential. (See *Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089.) But this does not mean the court's ruling was unreviewable. "The scope of the trial court's discretion is limited by law governing the subject of the action taken. . . . An action that transgresses the bounds of the applicable legal principles is deemed an abuse of discretion." (*SEC Acquisitions*, at p. 751.) In this case, the court erred because its order went beyond the bounds of its authority.

## DISPOSITION

Order reversed. We remand the matter for the court to narrow the document production order to require production only of those documents pertaining to Molina's

31

compensation, property, or services, and/or the Institute's debts owed to Molina.

Appellant to recover costs on appeal.

HALLER, Acting P. J.

WE CONCUR:

IRION, J.

DATO, J.