Opinion
 

 RYLAARSDAM, J.
 

 We hold a subpoena under Code of Civil Procedure section 2020, subdivision (d) (all further statutory references are to the Code of Civil Procedure) must describe the documents to be produced with reasonable particularity. Generalized demands, insupportable by evidence showing at least the potential evidentiary value of the information sought, are not permitted. When responding to a motion for a protective order, the party seeking such discovery must supply evidence demonstrating a reasonable relationship between the materials sought to be produced and the issues
 
 *219
 
 involved in the case. We therefore issue a writ of mandate directing the trial court to vacate orders compelling a nonparty to produce materials in response to a subpoena describing generalized broad categories of materials rather than specific documents or, at least, categories of documents or materials which are reasonably particularized in relation to the manner in which the producing party maintains such records.
 

 Facts
 

 Delco Systems Operations contracted with Rockwell International to supply trainable gun mount systems (gun mounts). Delco, in turn, contracted with Thiem Industries, Inc., to produce some of these gun mounts. The contracts required the gun mounts be manufactured in accordance with designated specifications. The marriage between Delco and Thiem was not a happy one. Delco claimed Thiem failed to meet the specifications and ultimately refused to accept the gun mounts. Instead Delco contracted with Calcor Space Facility, Inc., to supply the mounts. Not surprisingly, litigation resulted.
 

 Thiem sued Delco on various theories, in essence contending Delco failed to adequately coordinate and manage the project and failed to provide Thiem with adequate and timely engineering information. Delco’s cross-complaint followed. It also asserted various theories, contending Thiem failed to meet the specifications and otherwise delivered defective gun mounts.
 

 In the course of the litigation, Thiem served a subpoena under section 2020 on Calcor’s custodian of records demanding Calcor, a nonparty and Thiem’s competitor, to, in effect, produce all materials in its possession relating to gun mounts, going back nearly 10 years. The subpoena fails to identify any specific document but merely describes broad categories of documents and other materials. The categories of materials to be produced are described in an attachment to the subpoena which runs some twelve pages, including almost three pages of “definitions” and another three pages of “instructions.” Typical of the scope of the demand is the so-called definition of “documents” and “writings,” which itself runs almost a page and which includes such items as “business records, orders, invoices, statements, bills, books of account, ledgers, books, circulars, brochures, advertisements, bulletins, instructions, minutes, diaries, calendars, logs, schedules, drawings, photographs, charts, statistical, accounting, and financial statements, workpapers, notebooks, data sheets and every tangible thing produced by handwriting, typewriting, printing, . . . and all such data or information stored on computer-related media, ...”
 

 As examples of the categories of material demanded, we quote the first four of thirty-two requests: “Request No. 1. [H The Gun Mounts, including
 
 *220
 
 but not limited to documents relating to the design, modification, engineering manufacture, testing, rejection, revision, modification, or acceptance of the Gun Mounts or any subassemblies or components manufactured in connection with the Gun Mount Project. [^Q Request No. 2. [U All purchase orders, amendments to purchase orders, engineering change orders, drawings, specifications, invoices, rejection reports, accident reports and Material Review Board (‘MRB’) authorization reports relating to the Gun Mounts or the Gun Mount Project. HO Request No. 3. [f] All requests for quotation (‘RFQ’) or requests for proposal (‘RFP’) in connection with the Gun Mounts or the Gun Mount Project, [f] Request No. 4. [H All bid materials, including but not limited to cost estimates, labor estimates, and production time estimates prepared for and submitted by Calcor in connection with the Gun Mount Project.” As noted, each of these 32 “requests” is expanded by 6 pages of “definitions” and “instructions.” Although facially detailed and particularized, the demand, in effect, is very simple. It orders Calcor to produce everything in its possession which has anything to do with gun mounts (including the gun mount assemblies themselves).
 

 Calcor filed a motion for a protective order contending the subpoena was unreasonably burdensome and overly broad for service on a nonparty, sought confidential and proprietary information and was not limited to materials relevant to the subject matter of the suit between Delco and Thiem. Peter Webber, Calcor’s vice-president, stated in a declaration his corporation had three contracts with Delco for gun mounts, only one of which related to the mounts which were the subject of the controversy between the parties to the litigation. He also declared that there were thousands of documents fitting the categories described in the subpoena and that these documents were kept in various departments of the company. Webber stated “to respond to the Subpoena, Calcor would have to review the correspondence and general files in all of its departments,” and this project “would take two people a minimum of two and one-half to three weeks of full-time effort.” In addition, the declaration states: “The Calcor documents which describe Calcor’s methodology all indicate that the documents and the information contained in the documents is considered company confidential.”
 

 Thiem countered with a motion to compel Calcor to comply with the subpoena. No evidence contradicting Mr. Webber’s declaration was submitted. In their points and authorities which, of course, are not evidence, Thiem’s counsel justified compelling production of the subpoenaed materials as follows: “Following Delco’s improper rejection of Thiem’s work, Delco hired Calcor, at a vastly increased price, to construct another set of gun mounts. The plans, drawings, and specifications used by Calcor were substantially different from those used for the Thiem project, and indeed
 
 *221
 
 incorporated a large number of changes previously suggested by Thiem but rejected at the time by Delco. . . . These engineering changes and modifications, as implemented by Calcor, highlight Delco’s mismanagement of the Thiem project as well as the manifest design defects in Delco’s drawings which allegedly rendered the gun mounts unsuitable for the Air Force’s purposes. . . . Delco, for its part, has asserted that Thiem is responsible to cover the costs incurred by Delco in connection with its having to hire Calcor. There is thus an obvious issue as to why Calcor was hired and as to what necessitated the immense increase in costs associated with the gun mount project.”
 

 The trial court essentially denied Calcor’s motion and granted Thiem’s motion. Following our issuance of the alternative writ herein, the court modified its order, limiting the categories of materials to be produced, requiring Calcor to serve a log of documents as to which a privilege was asserted and providing for a protective order covering documents containing proprietary information. Petitioner objected to dismissal of the writ following this modification of the trial court’s order and we proceeded to hear the matter.
 

 Discussion
 

 Calcor’s contentions that the requirement it produce the materials is unduly burdensome and that the bulk of the materials requested lack relevancy (even under the expansive discovery test) are well taken. Whether served on a party or a nonparty, the procedure here used to compel production of documents and other materials represents an outrageous abuse of the discovery system, and exemplifies the misuses to which the discovery statutes are prone absent judicial consideration for the great burdens which may be imposed on parties and nonparties alike.
 

 Sometime ago, this court recognized the potential for such abuse in
 
 Mannino
 
 v.
 
 Superior Court
 
 (1983) 142 Cal.App.3d 776 [191 Cal.Rptr. 163], when we noted “We are also aware the discovery process is subject to frequent abuse and, like a cancerous growth, can destroy a meritorious cause or defense . . . .”
 
 (Id.
 
 at p. 778.) Our observations of the day-to-day practice of law lead us to conclude this cancer is spreading and judges must become more aggressive in curbing these abuses. Courts must insist discovery devices be used as tools to facilitate litigation rather than as weapons to wage litigation. These tools should be well calibrated; the lancet is to be preferred over the sledge hammer.
 

 The Unreasonable Burden Sought to Be Imposed on Calcor
 

 Both sections 2020 (dealing with inspection demands on nonparties) and 2031 (dealing with inspection demands on parties) require records sought to
 
 *222
 
 be produced be designated “either by specifically describing each individual item or by reasonably particularizing each category of item.” (§§ 2020, subd. (d)(1), 2031, subd. (c)(1).) Obviously the demanding party cannot specifically describe an individual item without first ascertaining its existence. Since the above-quoted phrase must be read as a whole, there is no reason to conclude the same requirement should not generally be applied where categories of items are sought to be produced. The requirement the demanding party
 
 “reasonably
 
 particularize each category of item” reinforces such a reading. The “reasonably” in the statute implies a requirement such categories be reasonably particularized from the standpoint of the party who is subjected to the burden of producing the materials. Any other interpretation places too great a burden on the party on whom the demand is made.
 

 Although facially Thiem’s detailed description of categories, combined with the three pages of “definitions” and another three pages of “instructions” would seem to satisfy a requirement of “particularity,” it is, in effect, a blanket demand and hardly constitutes “reasonable” particularity. As noted, Thiem’s 12-page demand might as well be condensed into a single sentence: Produce everything in your possession which in any way relates to gun mounts. There is no indication the “categories” bear any relationship to the manner in which Calcor maintains its records. The burden is sought to be imposed on Calcor to search its extensive files, at many locations, to see what it can find to fit Thiem’s definitions, instructions and categories.
 

 A practice has arisen to use the procedures of sections 2020 and 2031 as devices to determine whether documents exist. This places a great burden on the responding party, a burden which should generally be borne by the party seeking the discovery. We do not intend to suggest this use of the procedure to compel document production is always improper. However, particularly when dealing with an entity which is not even a party to the litigation, the court should attempt to structure discovery in a manner which is least burdensome to such an entity.
 

 We recognize that, in some cases, a requirement that preliminary discovery be conducted to ascertain the existence of documents or categories of documents may itself impose additional burdens. To the extent such burdens rest on parties seeking the discovery, since they may have to take preliminary depositions of records custodians or, in the case of parties, serve interrogatories, we deem the burden is properly placed where it belongs. To the extent this could further burden the party from whom such discovery is sought, such a party can avoid the burden by agreeing to supply the information in a less formal manner.
 

 We also recognize that, if the parties fail to agree to an informal method for identifying records, the need for a preliminary deposition may be raised
 
 *223
 
 as a bar to a needed deposition of the same person after the records have been examined. However, trial courts should be liberal in permitting such a second deposition upon a showing the earlier deposition was made necessary by the party’s refusal to cooperate in agreeing to less formal procedures.
 

 Because of the potential for promiscuous discovery imposing great burdens, even though ultimately the probative value of the discovered material may be questionable, trial judges must carefully weigh the cost, time, expense and disruption of normal business resulting from an order compelling the discovery against the probative value of the material which might be disclosed if the discovery is ordered. A carelessly drafted discovery order may result in cost and inconvenience far outweighing the potential usefulness of the material ordered to be produced. Because of the difficulty in drawing clear lines as to what is and what is not proper, this danger is particularly great with respect to orders requiring the production of materials.
 

 Thiem’s employment of six pages of “definitions” and “instructions” is particularly obnoxious. This, in effect, turns each of the 32 requests into a complicated “category” described in more than 6 pages. With respect to interrogatories, a similar practice is expressly prohibited by section 2030 subdivision (c)(5), which requires “[ejach interrogatory shall be full and complete in and of itself” and, except for Judicial Council form interrogatories under section 2033.5, “[n]o preface or instruction shall be included with a set of interrogatories . . . .” The statute does not expressly prohibit the practice of expanding on categories with respect to requests for production in this manner. However, the prohibition on discovery which is “unduly burdensome” (§ 2019 (b)(2)), if not providing a blanket prohibition for a limited use of some incorporation of external definitions, should be employed to greatly limit the scope of this practice. In this case, the grossly excessive use of “definitions” and “instructions,” in and of itself, makes the subpoena unduly burdensome.
 

 No Proof the Materials Sought Were Reasonably Calculated to Lead to the Discovery of Admissible Evidence
 

 Although the scope of civil discovery is broad, it is not limitless. Section 2017, subdivision (a) provides matters are subject to discovery “if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence.” The burden rests upon the party seeking the discovery to provide
 
 evidence
 
 from which the court may determine these conditions are met. Section 2031, subdivision (1), which applies to document production requests served on a party, requires a
 
 *224
 
 party seeking to compel such production to “set forth specific
 
 facts
 
 showing good cause justifying the discovery sought by the inspection demand . . . .” (Italics added.) Section 2020, the statute at issue, contains no such specific requirement, However, since both sections are part of a single statutory scheme, and since it is unlikely the Legislature intended to place greater burdens on a nonparty than on a party to the litigation, we read a similar requirement into the latter section.
 

 In law and motion practice, factual evidence is supplied to the court by way of declarations. Thiem provided argument but no evidence at all to permit the court to conclude the material sought was “admissible in evidence or appealed] reasonably calculated to lead to the discovery of admissible evidence.” The only justification for the request is contained in Thiem’s “Statement Pursuant to Rule 335(a)” and in a document entitled “Combined Opposition to Calcor Space Facility, Inc.’s Motion for Protective Order and Reply Brief in Support of Motion to Compel Calcor Space Facility, Inc. to Comply with Deposition Subpoena for Production of Business Documents.” Neither document is verified, and thus they do not constitute evidence.
 

 Even were we to ignore that the statements purporting to justify an order compelling Calcor to produce its documents and other materials are unverified, they still fail. There is an absence of specific facts relating to each category of materials sought to be produced; the justifications offered for the production are mere generalities. The very vice of the subpoena’s promiscuity is well illustrated by Thiem’s inability to provide focused, fact-specific justifications for its demands. The noted generality of the subpoena’s definitions, instructions and categories which merely add up to a demand Calcor produce everything in its possession having anything to do with gun mounts, precludes Thiem from demonstrating any particular item or category in fact constitutes or contains matter which “is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence.” (§ 2017, subd. (a).) The purported justification for imposing this great burden on Calcor necessarily suffers from the same generality as the subpoena itself.
 

 Although appellate courts have frequently stated “fishing expeditions” are permissible in discovery, there is a limit. As noted in
 
 Gonzalez
 
 v.
 
 Superior Court
 
 (1995) 33 Cal.App.4th 1539 [39 Cal.Rptr.2d 896], “These rules are applied liberally in favor of discovery
 
 (Colonial Life & Accident Ins. Co.
 
 v.
 
 Superior Court
 
 (1982) 31 Cal.3d 785, 790), and (contrary to popular belief), fishing expeditions
 
 are
 
 permissible in some cases.”
 
 (Id.
 
 at p. 1546.) However, early in the development of our discovery law our Supreme Court recognized the limits on such “fishing expeditions.” In
 
 Greyhound
 
 
 *225
 

 Corp.
 
 v.
 
 Superior Court
 
 (1961) 56 Cal.2d 355 [15 Cal.Rptr. 90, 364 P.2d 266], the seminal case in California civil discovery, the court gave examples of improper “fishing” which clearly apply here: “The method of ‘fishing’ may be, in a particular case, entirely improper (i.e., insufficient identification of the requested information to acquaint the other party with the nature of information desired, attempt to place the burden and cost of supplying information equally available to both solely upon the adversary, placing more burden upon the adversary than the value of the information warrants, etc.). Such improper methods of ‘fishing’ may be (and should be) controlled by the trial court under the powers granted to it by the statute.”
 
 (Id.
 
 at pp. 384-385.) The concerns for avoiding undue burdens on the “adversary” in the litigation expressed in
 
 Greyhound
 
 apply with even more weight to a nonparty.
 

 Had the
 
 Greyhound
 
 court been able to anticipate the tremendous burdens promiscuous discovery has placed on litigants and nonparties alike, it might well have taken a stronger stand against such “fishing.”
 
 Greyhound's
 
 optimism in noting the then new discovery system would be “simple, convenient and inexpensive,” would “expedite litigation,” and “expedite and facilitate both preparation and trial,” has certainly proven to have been considerably off the mark. (56 Cal.2d at p. 376.)
 

 The issues in this litigation may essentially be reduced to the question whether Thiem’s work met Delco’s specifications. This may be determined without any reference to the contract between Delco and Calcor or the specifications which are part of that contract. Another issue which may exist is whether Delco may recover the excess of the cost of the gun mounts procured from Calcor as damages for “cover” under California Uniform Commercial Code section 2712. (See
 
 Gerwin
 
 v.
 
 Southeastern Cal. Assn. of Seventh Day Adventists
 
 (1971) 14 Cal.App.3d 209, 217-218 [92 Cal.Rptr. 111].) If so, differences in specifications issued to Thiem and to Calcor may be relevant. However, discovery by Thiem from Delco should normally provide it with this evidence. As between parties to litigation and nonparties, the burden of discovery should be placed on the latter only if the former do not possess the material sought to be discovered. An exception to this may exist where a showing is made the material obtained from the party is unreliable and may be subject to impeachment by material in possession of the nonparty. Thiem has not even attempted to demonstrate why it cannot obtain the needed materials from Delco or why such materials might be unreliable.
 

 The Contentions Regarding Trade Secrets
 

 In light of our determination we need not consider Calcor’s contentions concerning trade secrets. While Thiem and Calcor are business competitors,
 
 *226
 
 we do not base our decision herein on that relationship. However, we note that courts should be particularly sensitive to the potential for creating an unfair commercial advantage to a party seeking discovery of materials such as are involved here.
 

 Disposition
 

 Let a writ of mandate issue directing the trial court to vacate its order compelling Calcor to produce documents, to serve a privilege log and to serve responses. This order is without prejudice to Thiem serving Calcor with a proper subpoena duces tecum under section 2020 and without prejudice to Calcor subsequently contesting the propriety of such subpoena. The alternative writ is discharged and this court’s stay order is dissolved. Thiem shall pay Calcor’s costs.
 

 Sills, P. J., and Crosby, J., concurred.
 

 The petition of real parties in interest for review by the Supreme Court was denied May 28, 1997. Werdegar, J., was of the opinion that the petition should be granted.